STATE BAR GRIEVANCE ADMINISTRATOR v GROSSMAN

OPINION OF THE COURT

1. ATTORNEY AND CLIENT—MISREPRESENTATION—DISCIPLINARY RULES
   —DISHONESTY—FRAUD—DECEIT—STATE BAR RULES—STATE BAR
   GRIEVANCE BOARD—REPRIMAND—DISBARMENT—SUSPENSION.

   An attorney's misrepresentation constituted a violation of a
   provision in the Disciplinary Rule that a lawyer should not
   engage in conduct involving dishonesty, fraud, deceit, or mis-
   representation and a State Bar Rule that conduct which vio-
   lates standards or rules of ethics or professional responsibility
   is grounds for discipline, where he told the police that his car
   had been taken as a prank when in fact he had voluntarily
   turned the car over to his repairman for needed work and the
   repairman would not release the car until some of the attor-
   ney's outstanding bills were paid; the discipline ordered by the
   State Bar Grievance Board, a reprimand, was correct as the
   attorney's action, while definitely misconduct and not com-
   mendable, is clearly not the kind of misconduct warranting
   disbarment or suspension (State Bar Rule 15; DR 1-102[A][4]).

2. ATTORNEY AND CLIENT—REPRIMAND—STATE BAR GRIEVANCE
   BOARD.

   Reprimand is the mildest form of discipline which can be applied
   by the State Bar Grievance Board for misconduct of an attor-
   ney.

OPINION FOR REVERSAL
T. G. KAVANAGH and LEVIN, JJ.

3. ATTORNEY AND CLIENT—ATTORNEY'S CONDUCT—SUPREME COURT.

   *The very highest standards can properly be required of a lawyer*
   *in his professional conduct, but when he is not purporting to*
   *act as a lawyer, his private conduct must be publicly scandal-*
   *ous or indicate that he properly cannot be trusted to advise and*

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorney at Law §§ 25, 26.
[2–4] 7 Am Jur 2d, Attorney at Law §§ 24–58.

*act for clients before it justifies public Bar discipline; therefore, in deciding whether any discipline is justified, the Michigan Supreme Court should distinguish carefully between what a lawyer does as a lawyer and what he does as a private citizen.*

4. ATTORNEY AND CLIENT—REPRIMAND—GRIEVANCE PROCEDURE—
    CRIMINAL LAW—MISDEMEANOR—FALSE REPORT TO POLICE.

*Formal reprimand of an attorney appears inordinate and in the view of the Michigan Supreme Court diverts the proper attention of the grievance procedure where the attorney's conduct was not egregious, it was foolish and may have amounted to a misdemeanor, and even if the prosecutor had preferred charges of making a false report to the police and respondent had been convicted of that misdemeanor the matter would be of little moment and should hardly concern the profession (MCLA 750.411a).*

Appeal from State Bar Grievance Board. Submitted May 8, 1973. (No. 4 May Term 1973, Docket No. 54,257.) Decided October 17, 1973. Rehearing denied November 21, 1973. Certiorari denied by the United States Supreme Court February 19, 1974.

Disciplinary proceedings against Neal L. Grossman. Order entered reprimanding respondent. Respondent appeals. Affirmed.

*Louis Rosenzweig,* for the State Bar Grievance Administrator.

*Neal L. Grossman, in propria persona.*

WILLIAMS, J. Neal Grossman, respondent, is a member of the Bar. He has represented Nicholas P. Kohalisky, operator of an automobile repair shop, since 1970 on an arrangement of doing legal work in return for services to respondent's automobile. Needing some work done on his car, respondent called Kohalisky to come and pick up his car in Southfield. He gave Kohalisky the keys and Kohalisky took the car back to his service shop in Novi on January 24, 1971. After several calls back

and forth, Kohalisky said he was not going to release the car until some of respondent's outstanding bills were paid him.

Respondent then went to the Novi police on January 30, 1971. There are three versions of what then took place between respondent and the police. The respondent's version was that he told the police officers that his car had been taken, and was possibly being held as a prank by Kohalisky even though the police wanted to view it as stolen.[1] The Novi police officers who handled the complaint, on the other hand, testified that the respondent told them the prankster was one Parmenter.[2] On cross-examination by State Bar coun-

---

[1] On direct examination, respondent stated:

"Okay. I told Corporal Johnson my car was being held as a practical joke * * * .

"*Q.* Did you tell him who was holding it?

"*A.* Yes.

"*Q.* Who did you say was holding it?

"*A.* Nicholas Kohalisky.

"*Q.* Was any other name mentioned?

"*A.* No—I told him it was being held at the property of Bruce Parmentier. *[sic.]*

* * *

"*A.* * * * he [police officer Johnson] said he could not help me.

"*Q.* Why?

"*A.* Because there was no stolen car report.

* * *

"*Q.* What else was said?

"*A.* I mentioned to him that I felt that a larceny by trick or larceny by conversion * * * had taken place * * * , and that I would not make out any report as he said he required in order to help me because I told him that was not the facts."

[2] During the hearing Corporal Johnson of the Novi Police Department, who investigated respondent's charges stated:

"He [respondent] advised us that to his knowledge Mr. Parmenter took his car for no apparent reason other than possibly a prank * * * ."

Officer Appleton who aided Corporal Johnson in this matter testified that respondent:

" * * * stated Bruce Parmenter had taken his car from Southfield at his apartment and the only explanation he could give us, as far as him taking the car, was that it was a prank."

sel, respondent admitted that he did not tell the Novi police that he had delivered the car to Kohalisky on January 24.[3] Thus whatever the police were told it was not the truth.[4] The Grievance Board found that:

"On Sunday, January 30, 1971, the respondent went to the Novi Police Department at approximately 10:30 or 10:45 p.m. and stated that his car had been stolen from his apartment in the City of Southfield. * * * Upon inquiry from the respondent the officers were advised by him that Mr. Parmenter, * * * had taken

---

[3] On cross-examination of respondent, the following exchange took place:

"*Q.* As I understand it, then, you didn't tell the Novi Police that you had delivered the car to Mr. Kohalisky on January 24?

"*A.* That's correct."

[4] There was a further conflict of stories which led to a later police report alleging respondent filed a false report to the police. Police officers said respondent told them the car was taken the 30th, but the fact was, of course, it was taken earlier.

On the evening of January 30, shortly after Officers Johnson and Appleton returned to the station house from their meeting with respondent at the garage where his car was being kept, Frank Barabas, also a Novi police officer, reported for duty on the midnight shift.

Barabas and Johnson began to discuss the respondent's case. Barabas informed Johnson that he had been at Kohalisky's garage earlier in the week on a civil matter and, at that time, observed a gold Buick.

Johnson also testified that while at the garage with respondent on the evening of January 30th, respondent identified the gold Buick as his. Officer Johnson looked through the garage windows and viewed the car. He testified as to that observation:

"It was in the position as though it was not just pulled in. It was sitting to the left of the main area of the door. This was in the winter time and it was snowing and very sloppy outside. The car was all dry.

* * *

"*Q.* Did he tell you when it was taken?

"*A.* I believe it was that day on the 30th." [Respondent testified that he did not tell the Novi Police that the car had been taken from his home that evening.]

Thus, a combination of Johnson's and Barabas' observations conflicted with any theory that the car had been taken on the evening of the 30th. The report of the respondent's giving false information was given to the city attorney and it appears no further action on it was taken.

his automobile for no other apparent reason than possibly a prank."   .

The officers informed respondent that they could not be of help in returning the car to him and suggested he file a stolen car report with the Southfield police. The following day, January 31, 1971, respondent contacted the Southfield Police Department complaining that there had been a larceny by conversion of his car by Kohalisky. Respondent later obtained possession of the car by writ of replevin in a civil suit. .

The State Bar Hearing Panel concluded that "a preponderance of the evidence" established that respondent: (a) " * * * did wrongfully make a false report to the Novi Police Department indicating that his car had been stolen from his home on January 30, 1971" and (b) " * * * attempted to use the officers of the Law Enforcement Agency to effect the remedies which were available to him civilly".

The panel ordered that respondent be reprimanded for misconduct in that his actions were contrary to Supreme Court Rule 15 relating to the State Bar of Michigan and contrary to the Canons of Professional Ethics.[5] On July 6, 1972, the Griev-

---

[5] Rule 15 of the State Bar of Michigan states in part:

"Rule 15. Standards of Conduct.

"Sec. 2. Grounds for Discipline in General. The following acts or omissions by a member of the bar of this State, individually or in concert with any other person or persons, shall constitute misconduct and shall be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

* * *

"(4) Conduct that violates the standards or rules of ethics or professional responsibility adopted from time to time by the Supreme Court of this State;"

The Code of Professional Responsibility adopted by this Court October 4, 1971 (385 Mich lvi [1971]) and given immediate effect states in part:

"DR 1-102 MISCONDUCT.

"(A) A lawyer shall not:

* * *

ance Board affirmed the order of discipline and added costs to the respondent.

The issue is whether the use of misrepresentation by an attorney to police officers to induce official police action is in violation of Rule 15 and/or DR 1-102(A)(4).

As stated above, whichever story respondent told the police, it was not true. He told the police the car had been taken as a prank when in fact he had voluntarily turned the car over to his repairman for needed work. Respondent's misrepresentation constituted a violation of DR 1-102(A)(4) and Rule 15. Respondent was deceiving the police officers in hopes of having them do for him what he should have done and subsequently did do by civil action.

The discipline ordered was that the respondent be reprimanded.[6] This is the mildest form of discipline which can be applied by the Grievance Board for misconduct.[7] We believe that the discipline ordered by the Grievance Board was correct.

When he made the initial contact with the Novi police, respondent was clearly suffering from emotional and hypertense reaction to what he be-

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

[6] Rule 15, Sec. 3 states:

"Sec. 3. Types of Discipline. Misconduct shall be grounds for:

"(1) Revocation of the license to practice law in this State;

"(2) Suspension of a license to practice law in this State until further order of the Court;

"(3) Reprimand by a Hearing Panel, the State Bar Grievance Board, or court."

[7] State Bar Grievance Administrator, Richard H. Senter, discussed the role of reprimands in his article "On Grievances". 50 MSBJ No 12, pp 775–776 (December 1971). He stated:

"Reprimands are ordered in situations wherein a violation of professional standards is clearly established, but in lesser degree than customarily warrants deprivation of the right to practice—at least for a single offense alongside a generally exemplary record—or wherein mitigating circumstances are found."

lieved, not without reason, was an illegal conversion. He was not operating rationally. He quickly realized the error of his ways. He refused to make out a stolen car report and the next day made a fairly accurate report of the incident to the Southfield police. After that, respondent resorted to the appropriate legal remedy to regain possession of his car. While definitely misconduct and not commendable, respondent's action is clearly not the kind of misconduct warranting disbarment or suspension.

The Grievance Board order is affirmed with costs to the appellee.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

T. G. KAVANAGH, J. *(for reversal).* Grossman and his client had a convoluted relationship. The client was an auto repairman, and Grossman utilized his services as such. The client in turn employed Grossman's services as his attorney. They disagreed about the fees charged by each for their respective services.

The repairman had possession of Grossman's car and refused to give it back until Grossman paid him for work done on the car. Grossman went to the Novi police to secure their aid in recovering his car. The dealings between Grossman and the police are the basis for his censure by the Grievance Board.

While there was a dispute concerning the legal fees charged by Grossman, Grossman did not go to the police for their assistance in resolving that dispute or to pressure the repairman to pay his fees. Neither can it be said that Grossman used his legal training or his license as a lawyer in his

efforts to recover his car. He went to the police much as any other citizen might go to the police to obtain their assistance in recovering his property. Thus, the grievance does not concern Grossman's practice of law.

The Grievance Board accepted the testimony of the police that Grossman lied to them in reporting that the car was stolen or removed from his possession without his knowledge. At the grievance hearing the disputed question of fact was whether Grossman reported to the police that the car had been stolen. Grossman testified that he told them that the car was taken as a prank. It is argued that Grossman's admission at the hearing that he told the police the car was taken without his knowledge in light of his concession at the hearing that he had delivered the car to the repairman constitutes a sufficient basis for finding him responsible for making a false report and an adequate foundation for the Board's censure.

In deciding whether any discipline is justified, we should distinguish carefully between what a lawyer does as a lawyer and what he does as a private citizen. The very highest standards can properly be required of a lawyer in his professional conduct, but when he is not purporting to act as a lawyer, his private conduct must be publicly scandalous or indicate that he properly cannot be trusted to advise and act for clients before it justifies public Bar discipline.

In this case the conduct was not egregious. It was foolish and may have amounted to a misdemeanor. Even if the prosecutor had preferred charges of making a false report to the police[1] and

---

[1] MCLA 750.411a; MSA 28.643(1). In this regard it is noteworthy that the Oakland County Prosecutor made an affirmative decision not to prosecute the respondent here.

private citizen Grossman had been convicted of that misdemeanor the matter would be of little moment and should hardly concern the profession.

Formal reprimand in the circumstances of this case appears inordinate and in our view diverts the proper attention of the grievance procedure.

We would reverse and dismiss the complaint.

LEVIN, J., concurred with T. G. KAVANAGH, J.