STATE BAR GRIEVANCE ADMINISTRATOR v DEL RIO

Docket No. 61759. Argued June 5, 1979 (Calendar No. 6).—Decided November 26, 1979.

James Del Rio was suspended from the practice of law for five years by the State Bar Grievance Board for misconduct in his capacity as a Judge of the Recorder's Court of Detroit, for which he had been suspended from office for five years without salary. 400 Mich 665. He was also reprimanded by the State Bar Grievance Board for answering, inaccurately, in his application to take the State Bar examination that he had not been a party to a divorce proceeding in which he was charged with immorality or other dishonorable conduct. The parties appeal. *Held:*

1. The standard of review in this case is whether, upon the whole record, there is proper evidentiary support for the findings of the State Bar Grievance Board.

2. The respondent's claim that he was denied his constitutional right to equal protection of the law because of intentional and purposeful racial discrimination in the administration and application of the State Bar Grievance Rules in his case has no basis in fact and is utterly without substance. The respondent's allegation is premised upon the notion that he was "similarly situated" to a number of other judges who had been charged with various types of misconduct. As a hypothetical proposition, the notion that cases of misconduct of judges or lawyers are comparable beyond a limited and superficial extent is dubious; cases of this type generally must stand on their own facts. In this case, the argument that the respondent was similarly situated to other judges who had been charged with misconduct is without foundation, both in the nature and the seriousness of the charges brought against him. The Judicial

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 171.

2 Am Jur 2d, Administrative Law § 612.

[2] 46 Am Jur 2d, Judges § 50.

[3] 7 Am Jur 2d, Attorneys at Law §§ 65-67.

46 Am Jur 2d, Judges § 50.

Tenure Commission characterized the respondent's misconduct during his three-year term of office as demonstrating a degree and breadth of misconduct beyond any previously presented to it during its eight-year history. The record amply supports the finding of the hearing panel that the respondent's conduct as a judge of the Recorder's Court of Detroit constituted misconduct in violation of the State Bar Rules in that his conduct was prejudicial to the proper administration of justice, and exposed the legal profession or the courts to contempt, censure, or reproach.

3. The respondent also argues that the five-year suspension of his license to, practice law is overly harsh. The record in this case shows no abuse of discretion on the part of the hearing panel or the State Bar Grievance Board in suspending the respondent's license for five years.

4. Finally, the respondent argues that he was denied due process of law by the application of the Grievance Board Rule which provides that the record of the Judicial Tenure Commission may be admitted into evidence by the hearing panel of the State Bar Grievance Board. The history of the rule belies the respondent's claim that it was promulgated solely for the purpose of disbarring him; the major concern which led to its promulgation was avoiding the duplication of hearings with the same witnesses and evidence where a respondent is being investigated by both the Judicial Tenure Commission and the State Bar Grievance Board. The rule, founded upon reasonable concerns, was promulgated well before the respondent's judicial tenure hearing. He is bound to have been aware of its potential application.

5. The State Bar Grievance Administrator, on cross-appeal, argues that the hearing panel should have revoked the respondent's license to practice law *ab initio* for his inaccurate answers concerning his divorces in his application for admission to the State Bar. The hearing panel based its order of reprimand for this misconduct on the fact that the State . Bar Grievance Administrator failed to controvert the respondent's testimony that he explained his divorces in an interview with the Committee on Character and Fitness of the State Bar. An inexcusable laxness is shown on the respondent's part in failing to answer accurately the question in his affidavit of personal history, and a lack of diligence in failing to present the Board of Law Examiners with the requested documents relative to his divorces, but the present record does not demonstrate that the respondent wilfully sought to mislead the State Bar in his application for admission. Accordingly the reprimand of the

respondent for failing to answer the question accurately is affirmed.

Affirmed.

1. ATTORNEY AND CLIENT — DISCIPLINARY PROCEEDINGS — STANDARD OF REVIEW.

The standard of review in State Bar Grievance Board disciplinary proceedings is whether, upon the whole record, there is proper evidentiary support for the findings of the grievance board.

2. ATTORNEY AND CLIENT — JUDGES — DISCIPLINARY PROCEEDINGS — CIVIL RIGHTS — EQUAL PROTECTION.

Cases of misconduct by judges or lawyers generally must stand on their own facts; an argument that a respondent judge was denied equal protection of the law because he was "similarly situated" to other judges who had been charged with misconduct and should have been similarly disciplined is without foundation where the record shows that the respondent's misconduct during his three-year term of office demonstrated a degree and breadth of misconduct beyond any previously presented to the Judicial Tenure Commission during its eight-year history.

3. ATTORNEY AND CLIENT — JUDGES — DISCIPLINARY PROCEEDINGS — EVIDENCE — ADMISSIBILITY.

The Grievance Board Rule which provides that the record of the Judicial Tenure Commission may be admitted into evidence by a hearing panel of the State Bar Grievance Board in deciding a complaint against the respondent was primarily intended to avoid duplication of hearings with the same witnesses and evidence where a respondent is being investigated by both the Judicial Tenure Commission and the State Bar Grievance Board (GCR 1963, 965.3).

*Louis Rosenzweig,* Counsel for State Bar Grievance Administrator.

*Elbert L. Hatchett* for respondent.

PER CURIAM. Respondent appeals an order of affirmance of the State Bar Grievance Board (hereinafter Board) suspending him from the practice of law for a period of five years. The State Bar Grievance Administrator (hereinafter Administra-

tor) claims a cross appeal requesting this Court to revoke respondent's license to practice law *ab initio* and to strike respondent's name permanently from the roll of attorneys of this state.

Respondent is not a stranger to this Court. The instant case has its origins in proceedings brought by the Judicial Tenure Commission (hereinafter Commission) against respondent for judicial misconduct in his capacity as Judge of the Detroit Recorder's Court. See *In the Matter of Del Rio,* 400 Mich 665; 256 NW2d 727 (1977). A review of those proceedings is necessary to properly frame the instant action.

I

Respondent was licensed to practice law in Michigan on May 23, 1972. On November 3, 1972, he was elected to the office of Judge of the Recorder's Court for the City of Detroit for a six-year term and took office on January 1, 1973.

On July 30, 1976, the Commission filed its Formal Complaint No. 18 against respondent setting forth an array of charges of judicial misconduct. An amended complaint was filed by the Commission on October 6, 1976, alleging judicial misconduct on the part of respondent relating to the improper return of bond forfeitures. On August 30, 1976, this Court designated TIMOTHY C. QUINN, Judge of the Court of Appeals, as Master to consider Formal Complaint No. 18. The hearing on Formal Complaint No. 18 before the Master commenced on September 28, 1976 and continued through November 10, 1976. Seventy-three witnesses testified (2,400 pages of transcript were taken) and 128 exhibits were introduced into evidence. On January 18, 1977, the Master submitted his report to the Commission. In reviewing his

findings on the 25 charges of alleged judicial misconduct contained in Complaint No. 18, as amended, the Master found that nearly all of the allegations contained in the complaint had been amply established. He concluded:

"On this record, I conclude that Judge Del Rio:

"1. Uses his office to benefit friends and acquaintances.

"2. Sentences defendants in violation of MCL 771.14; MSA 28.1144 and Recorder's Court Rule 29.

"3. In order to accomplish his desire to place a defendant on probation, grants a new trial following a conviction for a non-probationable offense in order to permit a defendant to plead guilty to a probationable offense.

"4. Is not impartial in conducting trials.

"5. Exercises and attempts to exercise personal judicial control over selected cases.

"6. Uses threats of imprisonment or promises of probation to induce pleas of guilty.

"7. Is discourteous and abusive to counsel, litigants, witnesses, court personnel, spectators and news reporters.

"8. Abuses the power of contempt.

"9. Brags of his sexual prowess openly.

"10. Is continually guilty of judicial misconduct that is not only prejudicial to the administration of justice but destroys respect for the office he holds.

"In summary, Judge Del Rio has demonstrated by his conduct that he is legally, temperamentally and morally unfit to hold any judicial position."

On March 2, 1977, the Commission filed with this Court its opinion affirming the Master's findings and recommended that Judge Del Rio be removed from office and be permanently enjoined from holding any judicial office. This Court heard oral arguments on the matter on June 9, 1977. On July 29, 1977, we denied the Commission's recom-

mendation that Judge Del Rio be permanently enjoined from office and instead suspended him from office for a period of five years without salary. See *In the Matter of Del Rio, supra.*

On March 4, 1977, upon review of the opinion and recommendation of the Commission to this Court regarding Complaint No. 18, the Board issued an order pursuant to Grievance Board Rule 16.14[1] directing the filing of a formal complaint by the Administrator concerning the conduct of Judge Del Rio to determine his fitness to practice law. In the same order the Board referred the matter for a hearing and report to Wayne County Hearing Panel No. 12 (hereinafter Panel).

On March 9, 1977, the Administrator filed a formal complaint against respondent incorporating the charges and findings of the Commission contained in its Formal Complaint No. 18, as amended, the report of the Master to the Commission, and the opinion and recommendation of the Commission. The formal complaint of the Adminis-

[1] Grievance Board Rule 16.14 provided:

"(a) If the Board orders a hearing on the alleged misconduct of a judge, the hearing panel's legal counsel shall file a complaint setting forth the facts of the alleged misconduct within 10 days after the Judicial Tenure Commission files its order with the Supreme Court under GCR 1963, 932. The chairman of the hearing panel shall designate a place for the hearing and a date that is not later than 20 days after the complaint is filed. The complaint and notice of the hearing shall be served within 5 days after the complaint is filed. Within 10 days after the complaint and notice of the hearing are served, the respondent judge shall file an answer.

"(b) Hearing procedures shall be as outlined in Grievance Board Rule 16.11. The record of the Judicial Tenure Commission proceedings may be admitted at the hearing. The Administrator or the respondent may introduce additional evidence.

"(c) Within 30 days after the conclusion of the hearing, the panel shall file with the clerk of the Supreme Court a report and order conforming to Grievance Board Rule 16.13 and serve them upon the respondent and the Board. If the Judicial Tenure Commission has recommended discipline or suspension, the panel may not impose a sanction greater than that recommended by the Judicial Tenure Commission."

trator charged specifically that the allegations set forth in paragraphs 4 through 13, 15 through 19, and 22 through 24 of Formal Complaint No. 18, and the conduct set forth in the amended complaint constituted professional misconduct in violation of State Bar Rule 15, § 2, subds (1), (2), (3) and (4)[2] and Canon 1, DR 1-102(A), subds (1), (2), (4), (5) and (6) of the Code of Professional Responsibility.[3]

On March 10, 1977, respondent was served with the formal complaint and notice of a hearing before the Panel on March 21, 1977. Formal hearings were held before the Panel on March 21, April 20, May 11, June 6, June 17, June 28, July 7, August 9, September 8 and October 19, 1977.

On March 21, 1977, respondent requested an indefinite postponement of the proceedings. On April 11, 1977, the Board issued an order extend-

[2] State Bar Rule 15, § 2, subds (1), (2), (3) and (4) provided:

"The following acts or omissions by a member of the bar of this State, individually or in concert with any other person or persons, shall constitute misconduct and shall be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

"(1) Conduct prejudicial to the proper administration of justice;

"(2) Conduct that exposes the legal profession or the courts to obloquy, contempt, censure or reproach;

"(3) Conduct that is contrary to justice, ethics, honesty or good morals;

"(4) Conduct that violates the standards or rules of ethics or professional responsibility adopted from time to time by the Supreme Court of this State;".

[3] Canon 1, DR 1-102(A), subds (1), (2), (4), (5) and (6) of the Code of Professional Responsibility provides:

"A lawyer shall not:

"(1) Violate a Disciplinary Rule.

"(2) Circumvent a Disciplinary Rule through actions of another.

\* \* \*

"(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

ing the time for respondent to file preliminary motions, directing respondent to file his answer to the formal complaint by April 25, 1977, and adjourning the cause for a hearing on June 6, 1977.

On April 11, 1977, respondent filed with the Board a motion to dismiss, motion to quash, motion to adjourn without date, motion to declare disciplinary powers of the panel in this matter, motion to conduct voir dire, motion to exclude certain material, motion to strike, motion to adjourn until completion of discovery, motion to extend time for answer, affidavit in support, notice of hearing and proof of service. On April 13, 1977, the Administrator filed an answer to respondent's nine motions.

On April 20, 1977, respondent moved to dismiss the formal complaint of the Board for lack of jurisdiction. On April 21, 1977, the Administrator filed an answer to respondent's motion to dismiss complaint for lack of jurisdiction.

On April 25, 1977, the Board issued an order denying respondent's nine motions of April 11, 1977, and respondent's motion to dismiss complaint for lack of jurisdiction.

Meanwhile, on April 25, 1977, respondent filed his answer to the formal complaint of the Board.

On May 3, 1977, the Administrator filed with the Board a motion for leave to file an amended complaint alleging that since filing the formal complaint the Administrator had discovered that respondent had falsified his affidavit of personal history in his application to take the state bar examination required by the State Board of Law Examiners. The Administrator charged specifically that respondent's negative answer to the question[4]

---

[4] Question 28 of the affidavit of personal history required by the State Board of Law Examiners read in pertinent part as follows:

"Have you ever been:

whether he had ever been a party to a divorce proceeding in which he was charged with immorality or other dishonorable conduct was false, and known by respondent to be false, in that respondent had been involved as defendant in two divorce proceedings in which he had been charged with sexual misconduct and one divorce proceeding as plaintiff in which he had been charged with non-support. The Administrator claimed that respondent's misrepresentation was in clear violation of Canon 1, DR 1-101(A) of the Code of Professional Responsibility.[5] On May 11, 1977, the Board issued an order granting leave to file an amended formal complaint.

On May 27, 1977, respondent served his answer to the amended formal complaint and reserved the right to raise affirmative defenses. The Administrator moved to strike the claim of affirmative defenses set forth in respondent's answer to the amended formal complaint on May 31, 1977.

At the hearing before the Panel on June 6, 1977, respondent filed a restatement of the nine motions previously filed on April 11, 1977, and an answer to the Administrator's motion to strike respondent's claim of affirmative defenses. The motions were again denied. At the same hearing, the Administrator sought to introduce into evidence, as Exhibit I, Formal Complaint No. 18, as amended, the report of the Master, the opinion and recom-

---

"a. A party to divorce or support proceedings or to any legal action or proceeding, civil or criminal, in which you were charged with fraud, embezzlement, immorality, or other dishonorable conduct? If so, attach copies of the declaration, complaint, cross-declaration or cross-complaint, the answer thereto, and the opinion, judgment or decree of the court. (In divorce cases these documents are required likewise of plaintiffs or cross-plaintiffs.)"

[5] "(A) A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar."

mendation of the Commission, and the transcript of the testimony taken before the Master in accordance with Grievance Board Rule 16.14(b). The Panel refused to admit into evidence the proceedings of the Commission offered by the Administrator on the basis that they did not constitute the entire record of the Commission.

On June 8, 1977, the Administrator filed with the Board a petition for order of superintending control directing the Panel to admit Exhibit I offered by the Administrator. Respondent filed with the Board a response and an affirmative defense to the Administrator's petition for order of superintending control claiming that Grievance Board Rule 16.14(b) was unconstitutional as applied to respondent. On June 22, 1977, after a hearing on the petition for superintending control, the Board ordered the Panel to admit the complete record of the Commission and dismissed the Administrator's petition without prejudice. The complete record of the Commission was admitted into evidence at the hearing before the Panel on June 28, 1977.

On July 7, 1977, respondent requested an adjournment of the hearing due to illness and indicated his intention to proceed to Federal court to challenge the admissibility of the record of the Commission. Over the objection of the Administrator, the hearing was adjourned until August 9, 1977.

On August 9, 1977, the Panel admitted into evidence over respondent's objection a certified copy of this Court's opinion in *In the Matter of Del Rio, supra,* which had been decided by this Court on July 24, 1977. Respondent thereafter indicated that he intended to subpoena the members of the Michigan Supreme Court to probe into their men-

tal processes relating to the Court's opinion and to determine the Court's motive and intent in promulgating Grievance Board Rule 16.14(b). Respondent also indicated his intention to subpoena Judge QUINN and the members of the Commission to establish alleged racial bias. The Panel adjourned until September 8, 1977, and instructed the Administrator and respondent to file briefs on the jurisdiction of the Panel to determine the constitutional questions[6] raised by respondent.

On August 16, 1977, the Administrator filed a brief on the constitutional questions raised by respondent as requested by the Panel. Respondent did not file a brief in reply.

On September 1, 1977, the members of this Court were served subpoenas to appear and give evidence before the Panel on September 8, 1977, in regard to the matter of James Del Rio. The Clerk of this Court was served with a subpoena *duces tecum.* On September 6, 1977, the Attorney General filed a motion to quash the subpoenas.

At the hearing before the Panel on September 8, 1977, the Attorney General's motion to quash the subpoenas of the Justices of this Court was granted. However, the Clerk of this Court did appear at the hearing and presented this Court's file on Grievance Board Rule 16.14(b). Also, Judge QUINN testified as to his role as Master in the proceedings before the Commission.

At the hearing on September 8, 1977, respondent reiterated his desire to subpoena the members of the Commission in order to prove a "con-

---

[6] Respondent claimed that Grievance Board rule 16.14(b) was unconstitutional and promulgated solely for the purpose of disbarring him. Respondent also claimed that he was denied due process by the Commission and equal protection by both the Commission and the Board in that the proceedings brought against him were racially motivated.

spiracy" among the members of this Court and the members of the Commission to remove Judge Del Rio from the bench. The hearing of September 8, 1977 was adjourned to October 19, 1977, over the Administrator's objection, to enable respondent to serve subpoenas on the members of the Commission and to enable the Commission, through its counsel, to file a motion to quash the subpoenas. The members of the Commission were served with subpoenas on September 14, 1977, and a motion to quash the subpoenas was filed by counsel for the Commission with the Board on September 28, 1977. Respondent did not file a reply brief in opposition to the motion to quash subpoenas of the members of the Commission.

At the final hearing before the Panel on October 19, 1977, the Commission's motion to quash the subpoenas served upon its members was granted. At that point, both respondent and the Administrator rested their cases.

On November 23, 1977, the Panel filed its certified report and order of discipline with the Board. In its report the panel found:

"That the respondent's course of conduct as a Judge of the Recorder's Court for the City of Detroit constituted misconduct contrary to Canon 1, Code of Professional Responsibility and Rule 15, § 2(1), Supreme Court Rules Concerning the State Bar of Michigan in that his conduct was prejudicial to the proper administration of justice and Rule 15, § 2(2) in that his conduct exposed the legal profession or the courts to contempt, censure, or reproach."

On the basis of these findings, the Panel ordered that respondent's license to practice law be suspended through July 29, 1982.

In regard to respondent's answer to question 28a

in the affidavit of personal history submitted with his application for admission to the bar, the Panel found that respondent's answer was false and in violation of Canon 1, DR 1-101(A) of the Code of Professional Responsibility. However, the Panel held that the "gravamen of the offense was of a technical nature" since respondent's testimony that he had explained his divorces in an interview with the Committee on Character and Fitness of the State Bar of Michigan was unrefuted by the Administrator. Accordingly, the Panel ordered that respondent be merely reprimanded for failing to answer accurately question 28a of the affidavit of personal history.

The Administrator and respondent both filed with the Board petitions to review the report and order of the Panel. The Administrator took issue with the reprimand for failing to answer accurately question 28a of the affidavit of personal history, and respondent challenged the suspension of his license to practice law. After a show cause hearing, the Board affirmed the order of the Panel on July 10, 1978.

On July 14, 1978, respondent filed with this Court a claim of appeal from the order of affirmance of the Board. The Administrator filed a claim of cross-appeal on July 24, 1978. This Court heard oral arguments on this matter on June 5, 1979.

II

Respondent raises the following issues on appeal:

(1) Whether respondent was denied his constitutional right to equal protection because of intentional and purposeful racial discrimination.

(2) Whether the five-year suspension of respondent's license was overly harsh.

(3) Whether respondent was denied due process of law by the application of Grievance Board Rule 16.14(b) which permits the admission of the record of the Judicial Tenure Commission proceeding before a State Bar Grievance Hearing Panel.

While it may be worthy of observation that the record of the Commission relative to respondent's conduct as Recorder's Court Judge has not become less disturbing over a period of two years, a rehash of that record is unwarranted. In the matter before this Court today, the standard of review is whether, upon the whole record, there is proper evidentiary support for the findings of the State Bar Grievance Board. *State Bar Grievance Administrator v Kopp,* 402 Mich 74; 259 NW2d 559 (1977); *State Bar Grievance Administrator v Estes,* 390 Mich 585; 212 NW2d 903 (1973).

The thrust of respondent's argument on appeal, and the major theme upon which respondent's counsel dwelled in oral argument, is that respondent was denied his constitutional right to equal protection because of intentional and purposeful racial discrimination in the administration and application of the State Bar Grievance Rules in his case by the Administrator, Panel and Board. In short, respondent claims:

"The disciplinary rules have been selectively utilized to impermissibly treat appellant in a far different and considerably harsher manner than white individuals who had previously been similarly situated or who were facing even more serious charges. Most simply stated, no other reason than racial animus exists to explain this differential treatment of appellant."

Upon review of the record, we find respondent's

allegation of racial discrimination to have no basis in fact and to be utterly without substance. Respondent's allegation is premised upon the notion that he was "similarly situated" with a number of other judges who had been charged with various types of misconduct. As a hypothetical proposition, we find dubious the notion that judicial or attorney misconduct cases are comparable beyond a limited and superficial extent. Cases of this type generally must stand on their own facts. In the instant case, the argument that respondent was similarly situated with other judges who had been charged with misconduct is without foundation, in terms of both the nature and the seriousness of the charges brought against him. The Commission succinctly characterized respondent's case in its opinion:

"The huge number of instances of misconduct culled from his three-year term of office demonstrate a degree and breadth of misconduct far beyond any record heretofore presented in the eight-year history of this Commission. If Respondent's record of misconduct were divided equally among ten judges, there would be enough evidence to warrant removal of each of them."

Respondent argues that under the totality of the circumstances, the five-year suspension of his license to practice law is overly harsh. Respondent maintains that since judges are generally held to a higher standard of conduct than lawyers, the Panel and Board clearly abused their discretion in suspending his license for the same period of time that respondent was suspended from judicial office by this Court. Respondent would have us believe that his five-year suspension not only "represents a racially-inspired deviation from the past treatment of other judges, but it also constitutes a

punitive measure, bearing no reasonable relationship to the foremost goal of a bar disciplinary proceeding—the protection of the public from 'practitioners who are not trustworthy' ". We cannot agree.

In view of the record of the instant case, we perceive no abuse of discretion on the part of the Panel or the Board in suspending respondent's license for five years. Indeed, the Administrator is adamant in his demand that respondent's license be permanently revoked *ab initio.*

Respondent's final argument is that he was denied due process of law by the application of Grievance Board Rule 16.14(b), which, in pertinent part, provides:

> "The record of the Judicial Tenure Commission proceedings may be admitted at the hearing. The Administrator or the respondent may introduce additional evidence."

Throughout the hearings before the Panel, respondent charged that Grievance Board Rule 16.14(b) was promulgated for the sole purpose of "getting" him. The history of that rule, however, belies respondent's claim, as it is clear from the record[7] that the major concern which led to the

---

[7] As mentioned, *supra,* the Clerk of this Court appeared before the hearing panel on September 8, 1977, and presented in evidence this Court's file on Grievance Board Rule 16.14(b). This Court's file on the rule reveals that as early as April 26, 1973, it was suggested that there was a need to address the problem of the lack of coordination between the proceedings of the State Bar Grievance Board and the Judicial Tenure Commission where a respondent was both an attorney and a judge. It is also clearly evident from the file that the impetus for the adoption of the rule was *In re Kapcia,* 389 Mich 306; 205 NW2d 436 (1973), in which this Court was presented with the anomalous situation involving the suspension of the license to practice law of an attorney who was also a probate judge in a county where the probate judge was permitted to practice law. Thus, it is apparent that the origins of Grievance Board Rule 16.14(b) predate

promulgation of the rule[8] was avoiding the duplication of hearings with the same witnesses and evidence where a respondent is being investigated by both the Commission and the Board. This rule, founded upon reasonable concerns, was promulgated well before respondent's judicial tenure hearing. He is bound to have been aware of its potential applicability.

In challenging Grievance Board Rule 16.14(b), respondent relies on *State Bar Grievance Administrator v Jaques,* 401 Mich 516; 258 NW2d 443 (1977), in which this Court held that it was error for a hearing panel to receive and consider as substantive evidence the edited transcript of testimony taken at an earlier hearing before a different hearing panel, which had been disqualified from deciding the complaint. We find that *Jaques* is inapposite to respondent's case. In the instant case we have a rule which expressly provides that the record of the Commission may be admitted into evidence by the hearing panel. Moreover, the rule provides that the Administrator and a respondent may each introduce additional evidence.

## III

On cross-appeal, the Administrator argues that the Panel erred in finding that respondent's failure to answer accurately question 28a in his affidavit of personal history given with his application for admission to the bar was a technical violation and that the Panel abused its discretion in reprimanding respondent rather than revoking *ab ini-*

the Commission's complaint against Judge Del Rio by about four years and arose from substantially different circumstances.

[8] Grievance Board Rule 16.14(b) was originally promulgated as Grievance Board Rule 16.6.2 on September 19, 1975. The rule was renumbered 16.14(b) on February 9, 1976. With the repeal of Grievance Board Rules 16.1-16.37 and the adoption of GCR 1963, 950-979 on May 4, 1978, to be effective October 1, 1978, the rule in question became GCR 1963, 965.3.

*tio* his license to practice law. As noted, *supra,* the Panel based its order on the fact that the Administrator failed to controvert respondent's testimony that he had explained his divorces in an interview with the Committee on Character and Fitness of the State Bar of Michigan.

While we perceive an inexcusable laxness on respondent's part in failing to answer accurately question 28a, and a lack of diligence in failing to present the Board of Law Examiners with the requested documents relative to his divorces, on the present record we are not convinced that respondent sought to wilfully mislead the State Bar in his application for admission. Accordingly, we affirm the reprimand of respondent for failing to answer accurately question 28a of the affidavit of personal history.

IV

In conclusion, we find the record amply supports the Panel's findings that respondent's conduct as a Judge of the Recorder's Court for the City of Detroit constituted misconduct in violation of State Bar Rule 15, § 2(1) in that his conduct was prejudicial to the proper administration of justice and State Bar Rule 15, § 2(2) in that his conduct exposed the legal profession or the courts to contempt, censure, or reproach. In regard to the Administrator's cross-appeal, we affirm the order of the Panel reprimanding respondent for failing to answer accurately question 28a of the affidavit of personal history in his application for admission to the bar.

Affirmed. No costs, neither party having prevailed in full.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.