GRIEVANCE ADMINISTRATOR v NICKELS

Docket No. 73240. Argued March 7, 1985 (Calendar No. 11).—Decided
August 20, 1985. Rehearing denied *post,* 1264.

The Grievance Administrator, Attorney Grievance Commission,
filed a complaint with the Attorney Discipline Board against
Thomas A. Nickels, alleging that he had committed acts of
professional misconduct by fraudulently and improperly appro-
priating funds from an employee's wages under the guise of
deductions for income and social security tax purposes and in
failing to remit the funds to the appropriate taxing authorities.
A hearing panel suspended the respondent's license to practice
law for 120 days, noting that in an earlier order of reprimand
the respondent was warned that further transgressions would
require more serious discipline. The Attorney Discipline Board
affirmed the suspension, but reversed a finding that respon-
dent's misconduct was unrelated to the practice of law. The
respondent appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
WILLIAMS and Justices RYAN, BRICKLEY, BOYLE, and RILEY, the
Supreme Court *held:*

Misconduct by an attorney need not be directly related to the
practice of law to be grounds for disciplinary action.

1. Misconduct which would subject an attorney to discipli-
nary proceedings may include activities unrelated to the prac-
tice of law which otherwise fall within conduct proscribed by
the Code of Professional Responsibility or court rules. Actions
contrary to justice, ethics, honesty, or good morals may be
misconduct, regardless of whether they occur in the course of
an attorney-client relationship.

2. Attorney grievance cases generally must stand on their
own facts and are best resolved case by case. It is the task of
the Supreme Court to make certain that within the record of

REFERENCES FOR POINTS IN HEADNOTES

[1-3] Am Jur 2d, Attorneys at Law, § 25 *et seq.*

Disciplinary action against attorney based on misconduct prior to
admission to bar. 92 ALR3d 807.

Disciplinary action against attorney or accountant for misconduct
related to preparation of tax returns for others. 81 ALR3d 1140.

each case there is proper evidentiary support for the findings of the hearing panel and the Attorney Discipline Board.

3. In this case, there is proper evidentiary support for the suspension of the respondent's license. A preponderance of the evidence presented before the hearing panel showed that the respondent violated applicable court rules and disciplinary rules by promising to withhold funds from an employee's wages to pay withholding and social security taxes and in failing to remit the funds to the appropriate taxing authorities. While simple wage disputes between an attorney and an employee generally do not rise to the level of misconduct, in this case, the respondent's representations and retention of the funds are misconduct. In light of the respondent's previous reprimands, the suspension of his license to practice law for 120 days for further misconduct was justified.

4. The order of the board reversing the hearing panel's "finding" that the respondent's conduct was unrelated to the practice of law must be modified because the panel never made such a finding. Rather, the panel found that the misconduct did not arise out of an attorney-client relationship.

Justice Levin, dissenting, agreed with the majority that a lawyer may be disciplined for activities which occur outside of an attorney-client relationship, but would vacate the decision of the attorney discipline board and remand the case to it for further proceedings which might include a hearing and filing of findings of fact regarding whether Nickels knew when he made the promise or representation to his employee that it was false or whether he made it recklessly. A breach of promise does not constitute misrepresentation or fraud unless the person making the representation knew when he made it that it was false, or made it recklessly, without any knowledge of its truth.

Affirmed in part and modified.

## Opinion of the Court

1. Attorney and Client — Professional Misconduct — Discipline.

Misconduct by an attorney need not be directly related to the practice of law nor occur in the course of an attorney-client relationship to be grounds for disciplinary action; misconduct which would subject an attorney to disciplinary proceedings may include activities unrelated to the practice of law which otherwise fall within conduct proscribed by the Code of Professional Responsibility or court rules such as actions contrary to justice, ethics, honesty, or good morals (GCR 1963, 953; DR 1-102[A]).

2. ATTORNEY AND CLIENT — PROFESSIONAL MISCONDUCT — MISAPPRO-
   PRIATION OF WAGE DEDUCTIONS.

   The withholding of funds by an attorney from an employee's
   wages under the guise of deductions for income and social
   security tax purposes and the failure to remit the funds to the
   appropriate taxing authority, was misconduct which, in light of
   previous reprimands, subjected the attorney to suspension of
   his license to practice law (GCR 1963, 953; DR 1-102[A]).

                   DISSENTING OPINION BY LEVIN, J.

3. ATTORNEY AND CLIENT — PROFESSIONAL MISCONDUCT — FRAUDU-
   LENT MISREPRESENTATION.

   Breach of a promise by an attorney to an employee does not
   constitute misrepresentation or fraud unless the attorney knew
   when he made it that it was false, or made it recklessly,
   without any knowledge of its truth.

*Michael Alan Schwartz,* Grievance Administra-
tor, and *John F. VanBolt,* Associate Counsel, for
the Attorney Grievance Commission.

*Thomas A. Nickels, in propria persona.*

CAVANAGH, J. We granted leave to review an
order of the Attorney Discipline Board which sus-
pended the license of attorney Thomas A. Nickels
for 120 days. 419 Mich 1206 (1984). We hold that
the findings of the hearing panel are supported by
the evidence, and affirm the order of suspension.

I

On May 16, 1983, the Grievance Administrator
filed a three-count complaint against respondent
Thomas A. Nickels. Count I alleged that respon-
dent made several misrepresentations to his for-
mer secretary, Laurie Shelden, regarding her
wages.

In 1981, respondent employed Shelden under a
Comprehensive Employment and Training Act
(CETA) program. Pursuant to an agreement with

CETA, respondent agreed to pay Shelden $140 per forty-hour work week. CETA would then reimburse respondent $70 per week.

Respondent informed Shelden that he would pay her $100 in cash at the end of each week. He also told her that he would retain $40 per week out of her wages to cover federal and state withholding taxes and social security payments. Respondent said that the precise amounts withheld would be calculated later and that Shelden would eventually be reimbursed for the difference. Count I alleged that, contrary to these representations, respondent never remitted any funds to the appropriate taxing authorities and refused to reimburse any portion of the $320 withheld during Shelden's eight weeks of employment. Shelden's informal attempts to recover this amount proved unsuccessful. She ultimately received a default judgment from the 88th District Court in the amount of $320, which remained unpaid as of the day of the hearing before the Attorney Discipline Board.

Respondent moved to dismiss the complaint at his initial hearing. He argued that his actions did not arise out of the attorney-client relationship and were unrelated to the practice of law. Instead, his actions amounted to a simple wage dispute which should not be considered misconduct under the Code of Professional Responsibility or the General Court Rules. The three-member hearing panel dismissed the motion.

Following an evidentiary hearing, respondent was found guilty of misconduct under Count I in violation of GCR 1963, 953(2), (3), and (4),[1] and DR

[1] GCR 1963, 953 states in pertinent part:

"*The following acts or omissions by an attorney,* individually or in concert with another person, *are misconduct and grounds for discipline, whether or not occurring in the course of an attorney-client relationship:*

"(1) conduct prejudicial to the proper administration of justice;

1-102(A)(1), (4), and (6).[2] The hearing panel dismissed Counts II and III on the basis of insufficient evidence.

Regarding Count I, the panel found that although the actions were misconduct, they did not relate directly to an attorney-client relationship. In suspending respondent's license for 120 days, the panel noted that he had received two prior reprimands. The panel cited the board's final words in an earlier order of reprimand which warned respondent that any further transgressions would constitute an attitudinal pattern calling for more serious discipline.

Respondent petitioned for review of the hearing panel's decision. The board's order affirming the suspension stated in part:

> IT IS ORDERED that the Hearing Panel report and order of suspension of 120 days be and the same hereby are AFFIRMED. Although discipline may be imposed whether or not misconduct has occurred in the course of an attorney client relationship,

"(2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach;

"(3) conduct that is contrary to justice, ethics, honesty, or good morals;

"(4) conduct that violates the standards or rules of professional responsibility adopted by the Court . . . ." (Emphasis supplied.)

See also MCR 9.104 which is substantially similar to GCR 1963, 953.

[2] Canon 1 of the Code of Professional Responsibility states: "A lawyer should assist in maintaining the integrity and competence of the legal profession." Disciplinary Rule 1-102(A) states:

"*A lawyer shall not:*

"(1) Violate a Disciplinary Rule.

"(2) Circumvent a Disciplinary Rule through actions of another.

"(3) Engage in illegal conduct involving moral turpitude.

"(4) *Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.*

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) *Engage in any other conduct that adversely reflects on his fitness to practice law.*" (Emphasis supplied.)

GCR 1963, 953, the Board specifically reverses the hearing panel finding that the misconduct in this matter was unrelated to the practice of law.

## II

Respondent argues that his actions cannot be deemed professional misconduct. He requests that this Court set up strict guidelines to determine what activity is "misconduct" for purposes of the code and the General Court Rules. We are not convinced, however, that a truly comprehensive definition or test for misconduct can be formulated. We believe therefore that review of these proceedings is best handled on a case by case basis.

> In reviewing the discipline imposed in a given case, we are mindful of the sanctions meted out in similar cases, but recognize that analogies are not of great value.
>
> "As a hypothetical proposition, we find dubious the notion that judicial or attorney misconduct cases are comparable beyond a limited and superficial extent. *Cases of this type generally must stand on their own facts." State Bar Grievance Administrator v Del Rio,* 407 Mich 336, 350; 285 NW2d 277 (1979).
>
> *Our task then is to make certain that within the record of each case there is proper evidentiary support for the findings of the hearing panel and the Attorney Discipline Board.* See, for example, *State Bar Grievance Administrator v Estes,* 390 Mich 585, 593; 212 NW2d 903 (1973), and *State Bar Grievance Administrator v Silverman,* 408 Mich 100, 110; 289 NW2d 683 (1980). [*In the Matter of Grimes,* 414 Mich 483, 490; 326 NW2d 380 (1982), *reh den* 417 Mich 1101 (1982). Emphasis supplied.]

Respondent also contends that he should not be disciplined for activities which occurred outside of

an attorney-client relationship. However, GCR 1963, 953 clearly indicates that actions contrary to justice, ethics, honesty, or good morals may be misconduct, regardless of whether they occur in the course of an attorney-client relationship. See n 1.

We agree with the hearing panel's conclusion that, while respondent's actions constituted misconduct, they did not relate directly to an attorney-client relationship. The dispute did not involve a client; it involved an employee. However, we think that such a finding is largely irrelevant in light of GCR 1963, 953.

The Attorney Discipline Board properly upheld the respondent's suspension. However, the board confused the matter by reversing the hearing panel's finding "that the misconduct in this matter was unrelated to the practice of law." The hearing panel never made such a finding. The panel only found that the misconduct did not arise out of an attorney-client relationship. Accordingly, we modify that portion of the board's order insofar as it reversed the "finding" that respondent's conduct was unrelated to the practice of law.

We likewise reject respondent's argument that his actions have to be directly related to the practice of law in order to be grounds for disciplinary proceedings. Misconduct may include activities that are unrelated to the practice of law, if they otherwise fall within conduct proscribed by the code or the General Court Rules. See, *e.g., State Bar Grievance Administrator v Grossman,* 390 Mich 157; 211 NW2d 21 (1973), *cert den* 415 US 919 (1974).[3] In *Grossman,* the Court upheld discipline imposed on an attorney who misrepre-

_____
[3] Respondent urges us to adopt the view expressed in Justice T. G. KAVANAGH's dissenting opinion in *Grossman.* That view would "distinguish carefully between what a lawyer does as a lawyer and what he does as a private citizen." *Id.,* p 164. The identical view was later

sented facts to a police officer and filed a false police report in an attempt to regain possession of his automobile. Thus, activities do not have to be directly related to the practice of law per se to be grounds for discipline. See also *Grimes, supra,* where we said:

> The rules of professional conduct adopted by this Court evidence a commitment to high standards and behavior beyond reproach. We cannot stress too strongly the responsibility of members of the bar to carry out their activities, *both public and private,* with circumspection.
>
> "[T]he concept of unprofessional conduct now embraces a broader scope and includes conduct outside the narrow confines of a strictly professional relationship that an attorney has with the court, with another attorney or a client." *State v Postorino,* 53 Wis 2d 412, 419; 193 NW2d 1 (1972).
>
> A lawyer is a professional "twenty-four hours a day, not eight hours, five days a week." *Id.* [*Grimes, supra,* pp 494-495. Emphasis supplied.]

## III

With these general principles in mind, and after

cited in Justice KAVANAGH's dissent in *State Bar Grievance Administrator v Gillis,* 402 Mich 286, 293; 262 NW2d 646 (1978), *reh den* 402 Mich 965 (1978). The *Gillis* dissent continued:

"The rules should be modified to provide that only misconduct in the course of professional activities or conduct outside of professional activities indicating that a lawyer can no longer be trusted to represent clients or appear in court warrants discipline."

Notwithstanding this view, the majority opinions in *Grossman* and *Gillis* indicate that conduct does not necessarily have to involve the practice of law in order to subject an attorney to discipline. However, even *if* we applied the dissents in *Grossman* and *Gillis* to the facts of this case, we would still affirm respondent's suspension. Respondent's actions also constituted "misconduct in the course of professional activities." *Gillis, supra.* Representations made regarding the payment of wages to employees and the filing of tax statements on their behalf are activities which are integrally related to an attorney's professional activities and responsibilities. We believe that such conduct was sufficiently related to his conduct as an attorney to warrant discipline under the facts of this case.

review of the entire record, we find that there is proper evidentiary support for the order suspending respondent's license for 120 days. Evidence presented before the hearing panel showed, by a preponderance of the evidence, that respondent violated the applicable General Court Rules and Disciplinary Rules. See *State Bar Grievance Administrator v Posler,* 390 Mich 581, 583; 213 NW2d 133 (1973); *State Bar Grievance Administrator v Crane,* 400 Mich 484, 493; 255 NW2d 624 (1977).

Respondent promised Shelden that she would be reimbursed after he talked to his accountant. He failed to do so, and Shelden was forced to file a complaint against respondent. She ultimately obtained a default judgment for the amount withheld. The fact that respondent eventually paid her $320 at the conclusion of the hearing is of little or no significance. The complaint's focus was not on the payment of money. Instead, the complaint alleged that respondent was guilty of misrepresentation and fraud. His actions evidenced a pattern of conduct which brought disrepute upon himself as a member of the bar and brought disrepute upon his profession. See *State Bar Grievance Administrator v McWhorter (On Rehearing),* 407 Mich 278, 286-288; 284 NW2d 472 (1979); *State Bar Grievance Administrator v Jackson,* 390 Mich 147; 211 NW2d 38 (1973).

Respondent represented that he was withholding money in order to pay the appropriate taxing authorities. However, he admitted, both at the hearing and in oral argument before this Court, that he never paid any taxes or social security payments on Shelden's behalf. We stress that in most instances "simple wage disputes" between an attorney and an employee will not rise to the level of misconduct. However, the facts of this case

persuade us that the Grievance Administrator was justified in pursuing the formal complaint.

## IV

After review of the record, we believe that respondent's representations and the retention of funds constituted misconduct. Furthermore, in light of respondent's prior reprimands, we are satisfied that a 120-day suspension was justified under the facts of this case. The board is entitled to consider past violations and sanctions in determining discipline. See *State Bar Grievance Administrator v Posler,* 393 Mich 38, 41; 222 NW2d 511 (1974). The order of the board is modified in accordance with this opinion. The respondent's suspension for 120 days is affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with CAVANAGH, J.

LEVIN, J. *(dissenting).* Nickels was charged with "fraudulently and improperly" appropriating to his own personal use the sum of $320 withheld from Laurie Shelden's wages at the rate of $40 per week for eight weeks "under the guise of income tax and social security withholding . . . ." This charge was based on allegations that Nickels had represented to Shelden that the money was being withheld for that purpose and that "contrary to the representations made to Laurie Shelden," Nickels did not remit any portion of the funds withheld to the federal or state government or account to her therefor.

In finding that the misconduct alleged was established, the hearing panel said:

> It is the finding of the Panel that there was a contract of employment in existence between the

Respondent and Laurie Shelden pursuant to the CETA agreement in Exhibit I. It is further found that Ms. Shelden worked 40 hour weeks for the eight week period of her employment and was entitled to $140 ($3.50 per hour) per week and she [was] paid only $100 per week by Respondent. Panel found the testimony of the Respondent inherently incredible.

As to Count I the Panel finds the Respondent guilty of misconduct in withholding $320 at the rate of $40 per week as income tax and social security and that said retainment of funds has resulted in the appropriation fraudulently and improperly by the Respondent.

Therefore the Panel finds the Respondent guilty of professional misconduct and in violation of the GCR 953(2), (3), and (4), and Canon I DR [1-102(A)(1), (4), and (6)] of Professional Responsibility.

The attorney discipline board affirmed without filing a separate opinion or findings.

This Court similarly concludes that fraud was established on proof that Nickels "promised Shelden that she would be reimbursed after he talked to his accountant," that "[h]e failed to do so," and that he did not pay her the $320 until the conclusion of the hearing before the panel of the attorney discipline board.[1] The Court continues that Nickels "represented that he was withholding money in order to pay the appropriate taxing authorities," but he never did so. "[W]e believe that respondent's representations and retention of funds constituted misconduct."[2]

A promise may be characterized as a representation, but a breach of promise does not constitute misrepresentation or fraud unless the person making the representation knew when he made it

---

[1] *Ante,* p 262.

[2] *Ante,* pp 262-263.

"that it was false, or made it recklessly, without any knowledge of its truth . . . ." *Hi-Way Motor Co v Int'l Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976).

The hearing panel did not find that Nickels knew when he made the promise or representation to Shelden that it was false or that he made it recklessly.

The question whether the evidence is sufficient to support a finding that Nickels had no intention of either accounting to Shelden or of paying the money withheld to the taxing authorities when he withheld the sums of $40 per week from her wages cannot properly be addressed unless or until the hearing panel finds that at those times he had no intention to do so.

It appears that Nickels may have violated federal and state law, but the misconduct charged and found was a fraudulent appropriation of funds belonging to Shelden. "An attorney may only be found guilty of misconduct as charged in the complaint."[3]

I would vacate the decision of the attorney discipline board and remand to it for further proceedings which might include a further hearing and filing of further findings of fact.

I agree with the majority that a lawyer may be disciplined for activities which occur outside of an attorney-client relationship.[4] I continue to adhere to the view that the limitations suggested by Justice THOMAS G. KAVANAGH are sound:

In deciding whether any discipline is justified,

---

[3] *State Bar Grievance Administrator v Jackson,* 390 Mich 147, 155; 211 NW2d 38 (1973). Similarly, see *State Bar Grievance Administrator v Freid,* 388 Mich 711; 202 NW2d 692 (1972); *State Bar Grievance Administrator v Corace,* 390 Mich 419, 425; 213 NW2d 124 (1973).

[4] *Ante,* pp 259-260.

we should distinguish carefully between what a lawyer does as a lawyer and what he does as a private citizen. The very highest standards can properly be required of a lawyer in his profes-. sional conduct, but when he is not purporting to act as a lawyer, his private conduct must be publicly scandalous or indicate that he properly cannot be trusted to advise and. act for clients before it justifies public Bar discipline. [*State Bar v Grossman,* 390 Mich 157, 164; 211 NW2d 21 (1973) (Kavanagh, J., *dissenting*).]