IN THE MATTER OF GRIMES

Docket No. 66527. Argued May 12, 1982 (Calendar No. 8).—Decided
November 23, 1982. Rehearing denied 417 Mich 1101.

Robert A. Grimes was charged by the Attorney Grievance Com-
mission with two counts of professional misconduct. The first
count was based on his conviction in a federal district court of
willful evasion of income taxes, a felony. He was accused in the
second count of counseling a client to commit perjury. The St.
Clair County Hearing Panel No. 2 of the Attorney Discipline
Board suspended his professional license for 60 days. The
grievance administrator appealed to the Attorney Discipline
Board, which left undisturbed the hearing panel's conclusion
that Mr. Grimes was guilty of illegal conduct involving moral
turpitude and conduct involving dishonesty, fraud, deceit, or
misrepresentation, and increased the period of suspension to
120 days. The grievance administrator appeals, contending that
the discipline is insufficient.

In an opinion by Chief Justice Fitzgerald, joined by Justices
Williams, Coleman, Ryan, and Moody, the Supreme Court *held:*

The seriousness of Mr. Grimes' offenses and his lack of
regard for the law as applied to him and for the legal system
render the board's disciplinary action insufficient. A suspension
for 120 days or less results in automatic reinstatement. Mr.
Grimes' reinstatement should not be automatic. The discipline
imposed is changed from a suspension of 120 days to revocation
of Mr. Grimes' license to practice law.

1. The Supreme Court has the ultimate responsibility to
oversee the conduct of the members of the State Bar. When an
order of the Attorney Discipline Board is appealed, the task of
the Court is to make certain that, within the record of each
case, there is proper evidentiary support for the findings of the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 4 Am Jur 2d, Appeal and Error §§ 171, 391.

7 Am Jur 2d, Attorneys at Law § 95.

[2] 7 Am Jur 2d, Attorneys at Law §§ 26, 87, 99.

[3] 7 Am Jur 2d, Attorneys at Law §§ 99, 100.

Reinstatement of attorney after disbarment, suspension, or resigna-
tion. 70 ALR2d 268.

hearing panel and the board. The entire record in this case provides ample support for the findings of the panel and the board.

2. The purpose of attorney discipline cannot be punishment, but the effect of discipline may be punishment. The protection of the public, the courts, and the profession may at times best be achieved through the deterrent effect of punishment. The disciplinary proceedings against Mr. Grimes stemmed in part from his felony convictions. Under the court rules, the fact of a felony conviction, without more, may serve as grounds for the suspension of an attorney's license. Mr. Grimes' convictions fit within several of the categories enumerated as grounds for suspension in the court rules. Additionally, the board left undisturbed the hearing panel's conclusion that Mr. Grimes was guilty of illegal conduct involving moral turpitude and conduct involving dishonesty, fraud, deceit, or misrepresentation in participating in the creation or preservation of evidence which he knew to be false and in counseling a client in conduct which he knew to be illegal or fraudulent, and contrary to the court rules and the Code of Professional Responsibility.

3. Discipline for misconduct is not intended as punishment for wrongdoing, but for the protection of the public, the courts, and the legal profession. The rules of professional conduct adopted by the Supreme Court evidence a commitment to high standards and behavior beyond reproach. Members of the bar must carry out their activities, public and private, with circumspection. The Supreme Court will invoke its authority to change a disciplinary order only where the discipline imposed is inappropriate. Under the court rules, a suspension of 120 days or less results in automatic reinstatement. A suspension for more than 120 days requires proceedings to determine that the attorney has complied with the order of discipline and is fit to be reinstated as a member of the bar. In view of the circumstances of this case, the discipline imposed is insufficient, and is changed from a suspension of 120 days to revocation of Mr. Grimes' license to practice law.

Justices Kavanagh and Levin would impose the discipline established by the Attorney Discipline Board.

1. ATTORNEY AND CLIENT — MISCONDUCT — DISCIPLINARY ACTION — APPEAL.

The discipline imposed upon an attorney for misconduct must stand on the facts of the particular case based on record findings with proper evidentiary support; the Supreme Court will invoke its power to change a disciplinary order only where

the disciplinary action imposed is inappropriate (GCR 1963, 971.5).

2. ATTORNEY AND CLIENT — MISCONDUCT — DISCIPLINARY ACTION — PURPOSE.

The purpose of disciplinary action against an attorney is not punishment, but is to protect the public, the courts, and the legal profession; however, the effect of the action may be punishment (GCR 1963, 954).

3. ATTORNEY AND CLIENT — MISCONDUCT — DISCIPLINARY ACTION — APPEAL.

Suspension for 120 days of the professional license of an attorney who was convicted of a crime involving moral turpitude and who was found to have engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation was inappropriate because the suspension would result in automatic reinstatement without proceedings to determine whether the attorney complied with the order of discipline during the period of suspension and was fit to be reinstated as a member of the bar (GCR 1963, 972.1, 972.2).

*Michael Alan Schwartz,* Grievance Administrator, for the Attorney Grievance Commission.

*Milliken, Magee & Yuille* (by *Herbert A. Milliken, Jr.)* for Robert A. Grimes.

FITZGERALD, C.J. This is an appeal of an Attorney Discipline Board order which suspended the professional license of attorney Robert A. Grimes for 120 days. Appellant grievance administrator contends that the discipline imposed is insufficient in view of the circumstances of this case. We agree, and revoke Grimes' license to practice law.

I

In August, 1979, Grimes was charged in a formal complaint brought by the grievance administrator with two counts of professional misconduct. The first count stemmed from two felony convic-

tions for federal income tax evasion. Grimes was accused in the second count of counseling a client to lie to investigators in connection with the tax fraud case.

The criminal prosecution was a "net worth" case in which Grimes was accused of not reporting more than $100,000 in income for 1971 and 1972. His defense to the charges included claims of embezzlement by a former employee, loan repayments from a since-deceased friend, poor judgment, legal error and sloppy bookkeeping.[1]

Federal prosecutors charged that some of the income Grimes concealed had been paid to him for representing clients in personal injury cases. Grimes contended that he did not report these so-called "fees" as income because the money actually served to fund further litigation in the cases. In support of his assertion, Grimes noted agreements between him and clients wherein the·clients "lent" him the sums described in the court judgments as attorney fees. The money was to finance other aspects of the personal injury cases, Grimes contended, with an accounting to come at the end of all litigation. He insisted that the procedure merely was a way of temporarily deferring tax liability.[2] A United States District Court jury in the Eastern District of Michigan found Grimes guilty in September, 1978, of violating 26 USC 7201:

"Any person who *willfully attempts* in any manner *to evade or defeat* any tax imposed by this title or the

[1] Transcript of proceedings before the St. Clair County Hearing Panel No. 2 of the Attorney Discipline Board, in the matter of Robert A. Grimes, File No. 35939-A, Vol. I, *passim.*

[2] *Id.*

payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

The federal district judge imposed fines totaling $10,000 and costs totaling $4,501.45 on the two counts. Grimes also was ordered imprisoned for one year, but that sentence was reduced to 30 days in jail, and he was placed on probation for one year. The Sixth Circuit Court of Appeals affirmed, 601 F2d 591 (CA 6, 1979); the United States Supreme Court denied certiorari, 444 US 915 (1979).

The gist of count two was that in the course of the tax investigation Grimes reduced to writing a loan agreement supposedly made with a client in 1972, and affixed to it a 1972 date. Further, the grievance administrator charged, Grimes delivered the document to the client and counseled her to attest that she had received it in 1972. The client did so testify, but later recanted and admitted that she really had received the written agreement in 1976.[3]

Grimes' explanation was that the discrepancy merely reflected semantic confusion. He claimed that he only had reminded his client that the "understanding" as to the loan had been reached in 1972. Grimes denied counseling the client to say that she had received the actual document in 1972.

The three attorneys comprising the St. Clair County Hearing Panel No. 2 listened to testimony from Grimes and several character witnesses from

_____

[3] In his appearance before the hearing panel, Grimes admitted that Donna Worth had not received the written loan agreement from him in 1972, but rather in 1974. However, she had testified at his criminal tax trial that she received the document from Grimes in 1976.

the Flint area, including attorneys, a probate court judge, a former mayor and business persons. The panel then suspended Grimes' license for 60 days, finding him in violation of various Michigan Court Rules and the Code of Professional Responsibility. The grievance administrator appealed to the Attorney Discipline Board, which increased the period of suspension to 120 days.[4] This Court granted the grievance administrator's request for leave to appeal. 412 Mich 1101 (1981).

## II

Chapter 95 of the Michigan Court Rules has governed attorney disciplinary proceedings since it took effect October 1, 1978. GCR 1963, 953 sets forth the grounds for discipline, including the five which the hearing panel found applicable to Grimes:

"The following acts or omissions by an attorney, individually or in concert with another person, are misconduct and grounds for discipline, whether or not occurring in the course of an attorney-client relationship:

"(1) conduct prejudicial to the proper administration of justice;

"(2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach;

"(3) conduct that is contrary to justice, ethics, honesty, or good morals;

"(4) conduct that violates the standards or rules of professional responsibility adopted by the Court;

"(5) conduct that violates a criminal law of a state or of the United States."

---

[4] The opinion and order of the Attorney Discipline Board increasing Grimes' suspension from 60 to 120 days was filed on January 9, 1981. David Baker Lewis, secretary of the seven-member board, dissented.

The hearing panel also found that Grimes had run afoul of certain provisions of the Code of Professional Responsibility which were adopted on October 4, 1971:

"DR 1-102. Misconduct.
"(A) A lawyer shall not:
"(1) Violate a Disciplinary Rule.

\* \* \*

"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

"DR 7-102. Representing a Client Within the Bounds of the Law.
"(A) In his representation of a client, a lawyer shall not:

\* \* \*

"(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.
"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

The Attorney Discipline Board not only upheld the conclusions of the hearing panel, but doubled the period of suspension to 120 days. The board derives from GCR 1963, 967.4 its authority to "affirm, amend, reverse, or nullify the order of the hearing panel in whole or in part or order other discipline".

It is this Court, however, that has ultimate responsibility to oversee the conduct of the approximately 21,000 members of the State Bar, and to

keep unsullied the reputation of the profession. When an order of the Attorney Discipline Board is appealed, therefore, "The Supreme Court may make any order it deems appropriate, including dismissing the appeal." GCR 1963, 971.5.

In reviewing the discipline imposed in a given case, we are mindful of the sanctions meted out in similar cases, but recognize that analogies are not of great value.

"As a hypothetical proposition, we find dubious the notion that judicial or attorney misconduct cases are comparable beyond a limited and superficial extent. Cases of this type generally must stand on their own facts." *State Bar Grievance Administrator v Del Rio,* 407 Mich 336, 350; 285 NW2d 277 (1979).

Our task then is to make certain that within the record of each case there is proper evidentiary support for the findings of the hearing panel and the Attorney Discipline Board. See, for example, *State Bar Grievance Administrator v Estes,* 390 Mich 585, 593; 212 NW2d 903 (1973), and *State Bar Grievance Administrator v Silverman,* 408 Mich 100, 110; 289 NW2d 683 (1980).

Neither Grimes nor the grievance administrator has challenged the conclusions of the hearing panel as adopted by the Attorney Discipline Board. Moreover, our review of the entire record convinces us that there was ample support for their findings. The grievance administrator, however, contends that the discipline imposed is not commensurate with the gravity of Grimes' conduct. Because our decision is to disbar Grimes, it is important to focus first on the goal of disciplinary proceedings.

"Discipline for misconduct is not intended as punish-

ment for wrongdoing, but for the protection of the public, the courts, and the legal profession. The fact that certain misconduct has remained unchallenged when done by others or when done at other times or has not been earlier made the subject of disciplinary proceedings is not an excuse." GCR 1963, 954.

This section makes clear that the *purpose* of discipline cannot be punishment, but does not preclude the *effect* of discipline from being punishment. It would be a rare attorney, indeed, who would not feel "punished" if precluded from practicing law. Further, the purpose of discipline—protection of the public, the courts and the legal profession—may at times best be achieved through the deterrent effect of punishment. We do not accept the assertion that "protection" and "punishment" are irreconcilable concepts and that the line between them cannot be crossed under GCR 1963, 954.

## III

As noted earlier, the first count against Grimes in the disciplinary proceedings stemmed from his felony convictions. When an attorney is found guilty of certain crimes, the fact of the conviction itself, without more, may serve as grounds for the suspension of his license.

"If an attorney is convicted of a felony, convicted of a crime punishable by imprisonment for a term of one year or more, convicted of a crime involving moral turpitude, or sentenced after a nolo contendere plea in connection with any of the foregoing, the board may suspend the attorney's license under rule 955 by order filed and served under subrule 967.5." GCR 1963, 969.

It is apparent from a reading of the above that

Grimes' convictions fit within several of the categories. Further, as the grievance administrator pointed out, Grimes was convicted of *willful evasion* of taxes under 26 USC 7201, not of misdemeanor failure to file income tax returns under 26 USC 7203. Jurors in the criminal prosecution disbelieved Grimes' explanations, at least to the extent that they rejected his assertion that there had been no deliberate attempt to avoid paying taxes. Thus, cases cited by Grimes which involved 26 USC 7203 are inapposite, as is a case cited by the Attorney Discipline Board.[5]

The felonious nature of Grimes' convictions and the potential penalties they carried would have been sufficient grounds for suspension of his license. "Any lawyer knowingly engaging in criminally proscribed conduct can properly be charged with an awareness of the possible jeopardy in which such activity may place his professional status." *In the Matter of Rabideau,* 102 Wis 2d 16, 25; 306 NW2d 1 (1981).

We emphasize, however, that the Attorney Discipline Board also left undisturbed the hearing panel's conclusion that Grimes was guilty of "illegal conduct involving moral turpitude" and "conduct involving dishonesty, fraud, deceit, or misrepresentation." This was a proper conclusion with ample support in the record. "[M]oral turpitude as a ground for the discipline of an attorney involves fraud, deceit, and intentional dishonesty for purposes of personal gain." 7 CJS, Attorney and Client, § 67, p 958.

Grimes' counsel has suggested that his client did not stand before the jury in the tax case as would any other citizen; he implied that because Grimes

---

[5] *Schwartz v Freed,* unpublished opinion of the Attorney Discipline Board, decided November 18, 1980 (File No. 36487-A).

is an attorney, jurors were more likely to find that his acts had been "willful". We expressly disavow such a belief.

"Although these views may be commonly held, they cannot be the basis of a disciplinary decision. To foster respect for our legal system we must assume that the jury acted properly and treated [the attorney] as it would any other individual. We cannot ask the public to voluntarily comply with the legal system if we, as lawyers, reject its fairness and application to ourselves." *In the Matter of Stroh,* 97 Wash 2d 289, 296, 297; 644 P2d 1161, 1165 (1982).

Grimes was accused in the second count of the complaint filed by the grievance administrator with what amounted to subornation of perjury. The findings of the hearing panel were:

"That in the course of his handling of the Ronald Worth personal injury claim, particularly his course of conduct in obtaining the agreement dated November 3, 1972, signed by Mrs. Donna B. Worth, wife of Ronald Worth, the respondent either knew or should have known that he was, in effect, counseling Mrs. Worth to make false or misleading statements to the Internal Revenue Service in connection with the investigation of the respondent by the United States Treasury Department with regard to his United States income tax returns."

The panel concluded that Grimes was guilty of participating "in the creation or preservation of evidence when he knows or it is obvious that the evidence is false" and of counseling or assisting his client "in conduct that the lawyer knows to be illegal or fraudulent".

Despite Grimes' explanation of semantic confusion, there is adequate support in the record for these conclusions. Such breaches of attorney-client

trust violate our profession's pledge to seek truth and justice.

"[T]he legal system is virtually defenseless against the united forces of a corrupt attorney and a perjured witness. Thus, 'For an attorney at law to actively procure or knowingly countenance the commission of perjury is utterly reprehensible.' *In re Allen,* 52 Cal 2d 762, 768; 344 P2d 609 (1959)." *In the Matter of Stroh,* 97 Wash 2d 289, 295, 296; 644 P2d 1161, 1165 (1982).

The rules of professional conduct adopted by this Court evidence a commitment to high standards and behavior beyond reproach. We cannot stress too strongly the responsibility of members of the bar to carry out their activities, both public and private, with circumspection.[6]

---

[6] Applicants for admission to the State Bar, once certified as qualified by the Board of Law Examiners, must vow to conduct themselves in an exemplary manner, both professionally and personally:

"I Do Solemnly Swear (or Affirm):

"I will support the Constitution of the United States and the Constitution of the State of Michigan;

"I will maintain the respect due to Courts of Justice and judicial officers;

"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;

"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;

"I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge and approval;

"I will abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;

"I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice;

"I will in all other respects conduct myself personally and professionally in conformity with the high standards of conduct imposed on members of the bar as conditions for the privilege to practice law in this State."

"[T]he concept of unprofessional conduct now embraces a broader scope and includes conduct outside the narrow confines of a strictly professional relationship that an attorney has with the court, with another attorney or a client." *State v Postorino,* 53 Wis 2d 412, 419; 193 NW2d 1 (1972).

A lawyer is a professional "twenty-four hours a day, not eight hours, five days a week". *Id.*

## IV

The hearing panel, in suspending Grimes' license for 60 days, noted that the evidence which the attorney had presented in mitigation was not sufficient to avoid discipline. The Attorney Discipline Board, in lengthening the suspension, focused on the seriousness of the offenses and the "lack of regard for the law as applied to him and for the legal system". This Court, in discussing its authority to change a disciplinary order, has said "we invoke this power only if the disciplinary action imposed by the grievance board is inappropriate". *State Bar Grievance Administrator v Posler,* 393 Mich 38, 41; 222 NW2d 511 (1974).

While we adopt the findings of the panel and board, we consider their discipline order "inappropriate" for the reasons discussed earlier and because we do not believe that Grimes' reinstatement to good standing should be automatic. A suspension for 120 days or less results in automatic reinstatement under GCR 1963, 972.1. However, under GCR 1963, 972.2:

"An attorney whose license to practice law has been revoked or suspended for more than 120 days is not eligible for reinstatement until he has petitioned for reinstatement under rule 973 and has established by clear and convincing evidence that

"(1) he desires in good faith to be restored to the privilege of practicing law in Michigan;

"(2) the term of the suspension ordered has elapsed or 5 years have elapsed since revocation of the license;

"(3) he has not practiced or attempted to practice law contrary to the requirement of his suspension or revocation;

"(4) he has complied fully with the order of discipline;

"(5) his conduct since the order of discipline has been exemplary and above reproach;

"(6) he has a proper understanding of and attitude toward the standards that are imposed on members of the bar and will conduct himself in conformity with those standards;

"(7) he can safely be recommended to the public, the courts, and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court;

"(8) for a suspension of 3 years or more, he has been recertified by the Board of Law Examiners; and

"(9) he has reimbursed or has agreed to reimburse the Client Security Fund any money paid from the fund as a result of his conduct. Failure to fully reimburse as agreed is ground for revocation of a reinstatement."

The Attorney Discipline Board addréssed Grimes' professional competence in its opinion:

"A respondent's competence or lack thereof is very often a factor in determining whether to require reinstatement proceedings by imposing a suspension of 121 days as opposed to 120 days; because neither the charges nor the record demonstrate a need for re-appraisal of respondent's abilities or fitness to handle legal matters, reinstatement proceedings will not be required."

We agree with the grievance administrator that

Grimes' competence should not have been a factor in deciding whether to impose discipline sufficient to require reinstatement proceedings. There was no allegation that Grimes lacked professional skill; further, technical proficiency should not serve to ameliorate the kind of misconduct involved in this case.

Counsel for Grimes also has stressed his client's previously unblemished record after more than 30 years of practicing law in this state. Several of those years were spent in public employment, as an assistant prosecuting attorney and as an associate municipal judge. However, neither Grimes' legal background nor his community accomplishments obliterate our responsibility to impose the discipline his violations warrant. In a case involving the reinstatement petition of a former probate judge, we noted that: "Regardless of our feelings of sympathy for a disbarred attorney, our paramount concern must always be to safeguard the public." *In the Matter of Trombly,* 398 Mich 377, 382; 247 NW2d 873 (1976).

As we explained earlier, we believe that our order in this case fulfills the protective purpose of attorney disciplinary proceedings. Therefore, the order of the Attorney Discipline Board is affirmed, except that the discipline imposed is changed from suspension for 120 days to disbarment.

Williams, Coleman, Ryan, and Blair Moody, Jr., JJ., concurred with Fitzgerald, C.J.

Kavanagh and Levin, JJ. I would impose the penalty established by the Attorney Discipline Board.