(9) Respondent's actions as described in paragraphs 2 through 8, constitute:

(a) Failure to observe high standards of conduct so that the integrity of the judiciary may be preserved as required by the Code of Judicial Conduct, Canon 1.

(b) Conduct that erodes public confidence in the judiciary in that it is irresponsible and improper. A judge must avoid impropriety and the appearance of impropriety in all his activities. He must expect to be the subject of constant public scrutiny and therefore accept the restrictions on his conduct that might be viewed as burdensome by the ordinary citizen, in violation of the Code of Judicial Conduct, Canon 2A.

(c) Failure to conduct himself at all times in a manner that promotes the public's confidence in the integrity of the judiciary, in violation of the Code of Judicial Conduct, Canon 2B.

(d) Conduct in violation of the Rules of Professional Conduct, in that it exposes the legal profession to obloquy, contempt, censure or reproach contrary to MCR 9.104(2).

(e) Conduct in violation of Michigan law, to-wit: MCL 750.540e(1)(a), MCL 750.540e(1)(d) and MCL 750.81 [MSA 28.808(5)(1)(a), 28.808(5)(1)(d) and 28.276].

In determining an appropriate sanction in this matter, we have considered not only Respondent's conduct, but also the candor of his replies and the public admission of his alcoholism, from which he continues to recover by means of his ongoing treatment and his committed participation in the National Council on Alcoholism program.

Therefore, it is the finding of this Commission that Respondent's conduct as set forth above, constitutes misconduct and that such conduct was clearly prejudicial to the administration of justice in violation of Article 6, Section 30 of the Michigan Constitution of 1963, as amended, the Code of Judicial Conduct, the Rules of Professional Conduct and the criminal laws of the State of Michigan.

The Judicial Tenure Commission having found that the respondent committed misconduct, the respondent having stipulated to the above-quoted findings of the commission, and the respondent having consented to public censure, it is ordered that the respondent be and hereby is publicly censured. This order shall stand as this Court's censure.

*Summary Disposition January 26, 1993:*

*In re* REINSTATEMENT OF AUGUST, No. 94561. In lieu of granting leave to appeal, the reinstatement order of the Attorney Discipline Board is reversed, and the hearing panel's order denying reinstate-

ment is reinstated. MCR 7.302(F)(1). While we are mindful of the careful consideration that has been given to this matter by the Attorney Discipline Board, the power to regulate and discipline members of the bar rests ultimately with this Court pursuant to constitutional mandate. *Grievance Administrator v August,* 438 Mich 296, 304 (1991); *In re Schlossberg v State Bar Grievance Bd,* 388 Mich 389, 395 (1972). For the reasons stated in the dissent to the Attorney Discipline Board's opinion granting reinstatement, the circumstances of this case, including the nature of the petitioner's misconduct, compel the conclusion that the hearing panel was correct in its determination that the petitioner should not be reinstated at this time.

BOYLE, J. (*dissenting*). I would deny leave to appeal or would grant leave to give guidance to the Attorney Discipline Board regarding applications for reinstatement in similar circumstances.

LEVIN, J. (*dissenting*). I would deny or grant leave to appeal. I adhere to the view that peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is required.[1] In the instant case, as indicated in the peremptory order,

---

[1] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [1974] [Rehnquist, J., dissenting]").

.

factual and legal assessment is required. Peremptory disposition is not appropriate. Further, this Court's peremptory disposition does not comply with the requirements of Const 1963, art 6, § 6, which requires that "[d]ecisions of the supreme court, including all decisions on prerogative writs, shall be in writing and shall contain a concise statement of the facts and reasons for each decision . . . ."

The order of peremptory reversal of the Attorney Discipline Board does not contain a statement of facts or an adequate statement of reasons for decision.

The statement in this Court's order—the "reasons stated in the dissent to the Attorney Discipline Board's opinion granting reinstatement, the circumstances of this case, including the nature of [August's] misconduct, compel the conclusion that the hearing panel" correctly determined that August "should not be reinstated at this time"—provides little or no guidance to August, the public, the profession, hearing panels, and the Attorney Discipline Board concerning what might constitute an appropriate period of time in light of the "circumstances of this case, including the nature" of August's misconduct.

I

Although the peremptory order does not contain a statement of facts, a statement of facts and of the history of proceedings is set forth in the opinion of the Court in *Grievance Administrator v August,* 438 Mich 296 (1991). That statement of facts and history of proceedings does not discharge this Court's constitutional obligation to include "a concise statement of the facts" in rendering a decision, because the statement of facts and proceedings set forth in *August* is necessarily incomplete; in *August,* this Court vacated an earlier order of the Attorney Discipline Board reinstating August's license to practice law and remanded the matter to the Attorney Discipline Board for further consideration in light of the Court's opinion.

Subsequently, the Attorney Discipline Board appointed a master to take testimony and to submit to the board a supplemental report containing the master's findings and conclusions concerning August's eligibility for reinstatement. The hearing was conducted, the master reported to the Attorney Discipline Board, the board ordered that August be reinstated, and the Grievance Administrator applied for leave to appeal.

II

The Michigan Court Rules[2] provide that a lawyer who has been suspended for more than 119 days or who has been disbarred may be reinstated by the Attorney Discipline Board if, among other criteria, the board concludes that

[2] MCR 9.123.

—the lawyer's conduct, since the order of discipline was entered, "has been exemplary and above reproach" (MCR 9.123[B][5]), and

—the lawyer has a "proper understanding of and attitude toward" the "standards" imposed on members of the bar (MCR 9.123[B][6]), and

—the lawyer can *"safely be recommended"* to the public, the courts and the legal profession "as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and as an officer of the court . . . ." (MCR 9.123[B][7].) (Emphasis added.)

August's petition for reinstatement was heard by a three-member hearing panel in 1989. All three members agreed that August met the clauses 5 and 6 criteria:

—August's conduct since the order of discipline was entered had "been exemplary and above reproach" and

—August had a proper understanding of and attitude toward and *would conduct himself in conformity with the standards* imposed on members of the profession if he were to be reinstated.

A majority of the hearing panel denied reinstatement, but on appeal the Attorney Discipline Board ordered reinstatement in 1989, with one member dissenting—the same member who dissented from the order of reinstatement entered by the board following further consideration by the board after remand by this Court.

The sole dissenter on the board has not contended that August does not meet the clauses 5 and 6 criteria requiring that the conduct of a person seeking reinstatement since the order of discipline shall have been exemplary and above reproach and that such a person has a proper understanding of and attitude toward and would conduct himself in conformity with the standards imposed on members of the profession if he were to be reinstated.

The sole disagreement concerns the construction and application of the clause 7 criterion which requires that there be a finding that the lawyer can "safely be recommended" to the public, the courts, and the legal profession "as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administrat[ion] of justice as a member of the bar and as an officer of the court."

A

The majority of the hearing panel and the dissenter on the Attorney Discipline Board concluded that August could not be safely recommended to the public, the courts, and the legal profession because, having in mind the seriousness of the offense committed by August, they were not, as stated by the hearing panel majority, convinced that his "subsequent conduct, no matter how exemplary, has sufficiently *ameliorated the taint* placed upon the legal profession,

by his commission of the crimes in question, to the extent that he could now be safely recommended as a person of trust. To do so, would only *further erode an already diminishing public confidence in the legal system."* (Emphasis added.)

The dissenter on the Attorney Discipline Board, noting that her colleagues on the board "acknowledge that the petitioner's conduct which led to his conviction was particularly reprehensible," expressed her agreement with the majority of the hearing panel "that reinstatement in this case will *inevitably erode public confidence* in the legal system and that that consideration was relevant to the finding that the petitioner cannot be safely recommended to the public as a person fit to act in matters of trust and confidence."

B

The peremptory order entered today adopts "the reasons stated in the dissent to the Attorney Discipline Board's opinion granting reinstatement . . . ."[3] The reasons stated in the dissent will accordingly be read as a further elucidation of this Court's opinion in *August.* That underscores, entirely apart from the merits, the impropriety of entering this peremptory order.

Elaboration on and modification of this Court's opinion in *August* should not be undertaken except on plenary consideration with full briefing, oral argument, and opinions.

The opinion of the Court in *August* spoke of the "nature of the offense" and the "time elapsed" since the commission of the offense and disbarment as relevant and important considerations in determining whether a disbarred attorney should be recommended to the position of public trust held by members of the State Bar.

The view of the dissenting board member, which it will be contended the Court adopted today, added concerns not recognized in the opinion of the Court in *August:*

—the passage of nine and a half years "had not ameliorated the taint on the legal profession caused by the petitioner's crimes;"

—reinstatement " 'will inevitably erode public confidence in the legal system,' " and that consideration is relevant in deciding whether August could be " 'safely recommended to the public as a person fit to act in matters of trust and confidence.' "

III

The State Bar filed a brief amicus curiae in *August.* The State Bar said that it had not taken a position on the applicability of the standards for reinstatement to August's specific case, and did not propose to do so. It sought, rather, a declaration that the nature of

---

[3] The order adds delphically, "[f]or . . . the circumstances of this case, including the nature of the petitioner's misconduct . . . ."

the underlying misconduct is properly considered in the course of a reinstatement proceeding, and to have the matter remanded to the Attorney Discipline Board for further consideration in light of such a declaration by this Court.

This Court, in *August,* adopted the view advocated by the State Bar, and granted such a remand for further consideration. The State Bar has not, in contrast with the action taken by the bar following the first order of reinstatement entered by the board, filed a pleading supporting the action of the Grievance Administrator in applying for leave to appeal from the order reinstating August on remand.

The State Bar did not assert, in the brief amicus it filed when *August* was being considered, that the passage of what was then seven years had not ameliorated the taint on the legal profession or that reinstatement of August would erode public confidence in the legal system.

No evidence was offered in the hearing before the master that would support a finding that the legal profession has in fact been tainted by August's crimes, and, if so, that such taint has not been ameliorated by the passage of time or, to use the language of the dissent, washed away.

Nor was any evidence offered at the hearing that would support a finding that August's reinstatement would inevitably erode public confidence in the legal system.

Without evidence that any taint still persists or that August's reinstatement would so erode public confidence in the profession, the statements of the dissenting member, which will appear to have been adopted by the Court, are rhetorical.

IV

Reference has been made to August's testimony refusing to acknowledge that he was guilty of the crimes of which he was convicted as bearing on the question whether he can be safely recommended to the public. This Court has not as yet required that a lawyer seeking reinstatement acknowledge his own guilt or the infallibility of the adjudicative system.

An American Bar Association criterion provides that a disbarred lawyer seeking reinstatement should recognize the wrongfulness and seriousness of the misconduct for which he was suspended or disbarred; the ABA thus would *not* require that a lawyer acknowledge his guilt, only that he recognize the wrongfulness and seriousness of the misconduct for which he was suspended or disbarred.[4]

August acknowledged that he was guilty in the sense that he was found guilty by a jury. He acknowledged he did many things, which on reflection he should not have done regarding the administration of justice. While he did not believe that he was guilty, he had not lost

---

[4] 1989 ABA Model Rules for Lawyer Disciplinary Enforcement, Rule 25E(4). See *August, supra,* p 327, for text.

faith in the law. He said that over the last six years he had come to realize that while the system has its imperfections, it is the best system in the world. It is administered by persons who sometimes make mistakes. He recognized that one works within the system, and does what one can to aid the system, and would be able to do so if permitted to practice law.

August testified that he "should have been far more astute, and far more aware of the problems that could be created by [his personal relationship with the court officer whom he subsequently married], but I wasn't tuned into it then." He said that he had made "a terrible error in judgment," and that "I feel extremely bad and have always felt bad about the problems that my personal life created for the Bankruptcy Court, the judges, the legal profession. Tremendously embarrassed and sorry with regard to that conduct, but at the time I just didn't give it[5] any thought."

When this matter was last considered, I wrote:

> The record establishes clearly and convincingly that August's conduct since he was disbarred has been exemplary and above reproach, and that he will bend over backwards to avoid even the appearance of impropriety were he to be reinstated. August states that he has no intention of practicing in the courts for the present. His reinstatement could, for an appropriate period of time, be so conditioned.[3]
>
> ---
>
> [3] MCR 9.106(2) permits suspension of a license for a specified term "with such additional conditions relevant to the established misconduct as a hearing panel, the board, or the Supreme Court may impose . . . ."
>
> MCR 9.121(C)(3) permits entry of a probation order under circumstances requiring the respondent to practice law only under the direct supervision of other attorneys.
>
> ---

[*August, supra,* pp 321-322.]

> The question posed by the court rule is whether August will, if reinstated, conduct himself in accordance with the standards imposed on the profession (clause 6) and can safely be recommended to the public, the courts and the legal profession (clause 7). If the Attorney Discipline Board concludes, as it has, on the basis of adequate evidence, which there is, that he will so conduct himself, and that he can be so safely recommended, it is quite beside the point that his misconduct was an embarrassment to the profession or, even, that his reinstatement

---

[5] Giving his "girlfriend," now his wife, Kathleen Bogoff, who was a court officer, gifts which had at least "an appearance of impropriety and reflect poorly upon not only the court, but upon [August] and the legal profession generally."

would be an embarrassment to the profession because of adverse reaction by persons who do not wish to see him reinstated, who might raise a clamor resulting in public dissatisfaction with his reinstatement.

Since 1985, only former Judge James Del Rio has been denied reinstatement. Seventy lawyers have been reinstated, including lawyers who have embezzled and misappropriated their clients' money, and who have lied and cheated. [*Id.,* pp 318-319.]

Although this Court said in *August* that "a denial [of reinstatement] should not be deemed a permanent disbarment,"[6] today's order gives no indication of when it would be appropriate for August again to apply for reinstatement.

I would, again, deny or grant leave to appeal.

APPENDIX A

FINDINGS AND CONCLUSIONS OF THE MASTER

Preliminarily, the master wishes to observe that the petitioner's testimony appeared to be straightforward and candid. His account of his personal and family life since April 1989 was underscored by the testimony offered by his wife, Kathleen August. The testimony of petitioner's other witness, Mayer Morganroth, Esq., corroborated the petitioner's account of his business activities during the last three years. Further support for the petitioner's testimony was found in the documentary materials contained in the Joint Exhibit. No witnesses were called in opposition and the petitioner's testimony was not rebutted in the record before the master.

In fashioning this report, the master is mindful that it is the petitioner alone who has the burden of establishing, by clear and convincing evidence, each of the applicable requirements of MCR 9.123(B). As the Attorney Discipline Board noted in *Matter of the Reinstatement of James Del Rio,* File No. 94/86 (August 11, 1987), "[T]here is no express or implied presumption that a petitioner is entitled to reinstatement [even if] the administrator is unable to uncover damaging evidence."

In its opinion directing the remand of this reinstatement matter to the Attorney Discipline Board for further consideration, the Supreme Court recognized "An element of subjective judgment" in the application of MCR 9.123(B) and singled out the "inherently subjective nature" of MCR 9.123(B)(1), (6), (7). *Grievance Administrator v August,* [438] Mich [296] (1991). As to these three criteria in particular, the master is presented with something of dilemma.

[6] *August, supra,* p 314.

The master's duties are relatively clear and unambiguous, for example, with regard to MCR 9.123(B)(3) which requires a finding as to whether or not the petitioner has practiced or attempted to practice law since April 14, 1989 or MCR 9.123(B)(4) which requires a finding as to whether or not the petitioner has complied fully with the order of discipline. Findings on those issues flow directly from the unrebutted evidence presented in these proceedings.

As to the requirements of MCR 9.123(B)(1), (6), (7), however, the exercise of the master's subjective judgment may imply a finding as to the ultimate issue in this case, the petitioner's eligibility for reinstatement to the practice of law. It is the master's understanding that he has been appointed primarily as a fact-finder and that the ultimate issue of the petitioner's eligibility for reinstatement has not been delegated to him. On the other hand, the master does not infer from the board's order that he is precluded from making a finding as to any of the criteria listed in MCR 9.123(B).

Therefore, it should be understood that the findings and conclusions which follow are based solely upon the evidence which is relevant to the time period from April 14, 1989 to the present. They are not intended to express an opinion by the master on the ultimate issue of reinstatement presented in this case. That appears to be a matter of judgment for the Board.

Based upon the testimony and exhibits which have been presented, the master finds as follows:

1) The petitioner has established by clear and convincing evidence that he desires in good faith to be restored to the privilege of practicing law in Michigan;

2) It is clear that more than five years have elapsed since the revocation of the petitioner's license to practice law which occurred June 28, 1983.

3) The petitioner has established by clear and convincing evidence that since April 14, 1989, he has not practiced or attempted to practice law contrary to the requirement of the Order of Revocation;

4) Petitioner has established by clear and convincing evidence that since April 14, 1989, he has complied fully with the order of discipline;

5) Petitioner has established by clear and convincing evidence that, since April 14, 1989, his conduct has been exemplary and above reproach;

6) Petitioner has established by clear and convincing evidence that he has a proper understanding of and attitude

toward the standards that are imposed on members of the bar and will conduct himself in conformity with those standards;

7) Petitioner has established by clear and convincing evidence, based upon his conduct since April 14, 1989 and his testimony to the master, that he can, in the opinion of the master, be recommended to the public, the courts and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administrat[ion] of justice as a member of the bar and as an officer of the court;

8) The master is not required to make any finding with regard to MCR 9.123(B)(8) (recertification by the Board of Law Examiners); and,

9) Petitioner has established by clear and convincing evidence that he is not indebted to the Client Security Fund of the State Bar of Michigan.

#### APPENDIX B
#### ATTORNEY DISCIPLINE BOARD MAJORITY OPINION

On December 22, 1989, the Board entered an order reversing a hearing panel order dated August 17, 1989 denying the petition for reinstatement filed by petitioner Irving A. August. The Grievance Administrator's application for leave to appeal the Board's decision was granted by the Supreme Court. On August 29, 1991, the Court issued its opinion which included a discussion of the appropriate standard of review to be employed by the Board as well as the Court's clarification that the nature of the offense and the time elapsed since its commission and since disbarment are relevant and important considerations in determining whether a disbarred attorney should be reinstated. The Board's order of December 22, 1989 was vacated and the matter was remanded to the Board for consideration in light of the Court's opinion.

On remand, the Board concluded that the record in this case should be supplemented by further evidence regarding the petitioner's conduct since his last appearance before the reinstatement panel on April 14, 1989. In an order dated December 2, 1991, the Board appointed former Supreme Court Justice Otis M. Smith as a master with instructions to conduct a further hearing conforming as nearly as practicable to a hearing under the provisions of MCR 9.124(C) to receive evidence, for the period commencing April 14, 1989, bearing upon the petitioner's eligibility for reinstatement. This hearing was conducted by the Master on March 4, 1992. Although the Grievance Administrator's role was not clearly specified in the Board's Order Appointing Master, the requirements of MCR

9.124(B) were followed by the Administrator to the extent that a further notice of the proceedings before the Master was published in the Michigan Bar Journal and an investigative report was prepared and filed. That report included a sworn interview of the petitioner conducted on December 12, 1991. The report of the Master was filed April 23, 1992.

Applying the standards enunciated by the Court in this case, the Board has reviewed the hearing panel decision of August 17, 1989, as well as the Master's report, for proper evidentiary support on the whole record. *Grievance Administrator v August,* 438 Mich 296, 304; [475] NW2d 256 (1991); *In re Freedman,* 406 Mich 256; 277 NW2d 635 (1979); *In re Grimes,* 414 Mich 483; 326 NW2d 380 (1982). As noted by the Court, there is no challenge in this case to the factual findings of the hearing panel, but rather to the panel's ultimate determination in its order of August 17, 1989 that the petitioner should not then be reinstated.

In its opinion of December 22, 1989, the Board noted that it did not necessarily disagree with the argument that "[T]here may be certain types of misconduct which are, by their very nature, so very reprehensible and inimical to basic principles of justice that the offending attorney's license should be permanently revoked." *Matter of Irving A. August,* ADB 241-88, Brd. Opn. 12/22/89, page 3. Nevertheless, the Board observed, "Disbarment is not necessarily permanent in Michigan and the Supreme Court has not ruled that it should be, even in the most extreme cases." Citing *Matter of the Reinstatement of Joseph Covington,* ADB 128-87, Brd. Opn. 8/29/88, page 3.

That issue remains to be resolved in Michigan. In its opinion to remand August's case to the Board, the Court recognized that while a number of jurisdictions hold that there is conduct so egregious that it should preclude reinstatement to the practice of law, "[W]e need not rule on that question because we are not prepared to say that this is such a case." *Grievance Administrator v August, supra* at 313.

More than two and one-half years have now elapsed since the issue of petitioner's eligibility for reinstatement was considered by the Board in its opinion of December 22, 1989. During that time, there has been no change in the seriousness of petitioner's crimes or in the Board's characterization of that misconduct. As stated in its previous opinion in this case, the Board continues to view the petitioner's conduct as a subversion of the system of justice which must be included in the category which we have chosen to describe as "[r]anking among the most grave and offensive to come before the Board." Brd. Opn. 12/22/89, page 3.

There has been a change in the time elapsed since the commission of the offense and since disbarment. The relevant

period of time in the indictment leading to the petitioner's conviction is October 3, 1979 to October 30, 1980. The petitioner's disbarment was deemed to be effective June 28, 1983. Therefore, in accordance with the Court's instructions, our re-examination of the petitioner's eligibility for reinstatement includes consideration of the twelve years which have elapsed since the petitioner engaged in criminal conduct and the nine years which have now elapsed since the revocation of his license to practice law.

The hearing panel majority which denied reinstatement in 1989 stated that they were not convinced that petitioner's subsequent conduct, no matter how exemplary, "has sufficiently ameliorated the taint placed upon the legal profession, by his commission of the crimes in question, to the extent that he could *now* be safely recommended as a person of trust." Panel Opinion, 8/17/89, pages 18-19 (emphasis added). Approximately three years have elapsed since that panel decision. In light of the Court's recognition that the Board reviews a panel's decision for adequate evidentiary support but at the same time possesses a measure of discretion with regard to its ultimate decision, *Grievance Administrator v August, supra* at 304, we have re-examined the petitioner's eligibility as it now exists in 1992.

In addition to the other applicable requirements of MCR 9.123(B), the Master has reported that the petitioner has established, based upon his conduct since April 14, 1989 and his testimony to the Master, that he can, as required by MCR 9.123(B)(7), be recommended to the public, the courts and the legal profession as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the court.

We are mindful that the petitioner's conduct and character has undergone an unusually high level of scrutiny including sworn interviews conducted at the office of the Attorney Grievance Commission on two separate occasions, the publication of two notices in the Bar Journal regarding his request to be reinstated, the preparation of two investigative reports by the Grievance Administrator's staff, and the petitioner's testimony during public proceedings before a hearing panel and a master in 1989 and 1992.

The Board has re-examined the petitioner's eligibility for reinstatement in light of the record of the proceedings before the hearing panel, the nature of the petitioner's criminal conduct, the length of time which has elapsed since the commission of those acts, the nine years which have elapsed since the petitioner's disbarment and the findings of the Master. We conclude that the petitioner has established his eligibility for

reinstatement under the applicable rules and the standards previously enunciated by the Court in this case.

We fully recognize, as did the Court, that application of MCR 9.123(B) involves an element of subjective judgment. *Grievance Administrator v August, supra* at 311. The inherently subjective nature of several of the requirements for reinstatement is unavoidable. We have considered the record in this case not only in light of the Court's instructions but in light of the paramount concern in every proceeding before this body—the protection of the public. *Matter of Trombly,* 398 Mich 377 [382]; 247 NW2d 873, 876 (1976). We are satisfied that the petitioner's reinstatement may now be granted.

John F. Burns, George E. Bushnell, Jr., C. Beth DunCombe, Elaine Fieldman, and Theodore P. Zegouras

Miles A. Hurwitz did not participate in this decision.

### APPENDIX C
#### ATTORNEY DISCIPLINE BOARD DISSENTING OPINION

Linda S. Hotchkiss, M.D.

I respectfully dissent from the Board's decision to grant reinstatement in this case. In large part, my reasons are stated in my dissenting opinion in *Matter of the Reinstatement Petition of Irving A. August,* ADB 241-88, Brd. Opn. 12/22/89. At that time, the Board considered a hearing panel decision to deny reinstatement in which the panel majority found that reinstatement of a former attorney whose crime went to "[t]he very heart of the administration of the judicial system and to the jugular of the judiciary" would only "[f]urther erode an already diminished public confidence in the legal system." At that time I said,

"The fundamental goal of this disciplinary system is, according to MCR 9.105, 'the protection of the public, the courts and the legal profession.' The hearing panel decision in this case was clearly consistent with that goal . . . .

"I agree with the panel majority that reinstatement in this case will inevitably erode public confidence in the legal system and that that consideration was relevant to the finding that the petitioner cannot be safely recommended to the public as a person fit to act in matters of trust and confidence."

When this matter was first considered by the Board in 1989, I voted to affirm the hearing panel's conclusion that the passage of seven years had not ameliorated the taint on the legal profession caused by the petitioner's crimes. Notwithstanding the language in the Supreme Court's Opinion regarding the

subjective nature of MCR 9.123(B)(7), I find nothing in the record now before the Board from which one could infer that the passage of two and one-half more years has washed that taint away.

The special master appointed by the Board is to be commended for his efforts on the Board's behalf. Neither party to these proceedings has objected to the contents of the master's report and I believe that it fairly reflects the evidence which was presented. However, the master recognized that his findings were limited to that evidence which was relevant to the petitioner's conduct since April 1989. It has now been shown that, among other things, the petitioner is an excellent husband and father, that he has conducted his personal and business affairs for the last three years without a negative incident and that he would very much like to be a lawyer again.

The panel which first considered this reinstatement petition concluded unanimously that the petitioner's conduct from 1982 to 1989 had been exemplary and above reproach and that he had a proper attitude of and understanding toward the obligations of an attorney. The proceedings before the master provide a basis for extending those conclusions through March 1992. However, those proceedings do not alter the fundamental question presented—whether or not sufficient time has now passed in light of the especially reprehensible nature of the petitioner's conduct.

Like my colleagues on the Board and the majority on the Court, I am also not prepared to say that this is a case where permanent disbarment is required and that the petitioner should never be reinstated. Having voted to affirm the hearing panel majority in 1989, I am not prepared to reverse the panel's decision simply because two and one-half more years have passed.