GRIEVANCE ADMINISTRATOR v ROSTASH

Docket No. 108835. Decided May 19, 1998. On application by the petitioner for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, increased the term of the petitioner's suspension from 90 to 180 days.

The Grievance Administrator filed a formal complaint with the Attorney Discipline Board against attorney James J. Rostash, arising from his assistance of Monroe County Prosecutor William D. Frey in civil claims and probate matters involving the relatives and estates of the victims of an automobile accident, while Mr. Frey was responsible for prosecuting the driver of the vehicle that had struck the decedents. A hearing panel concluded that the respondent had aided and abetted an elected prosecutor in violating his office, had agreed to split attorney fees, and had made material misrepresentations about Mr. Frey's involvement during the grievance investigation. The panel ordered that the respondent be suspended from the practice of law for ninety days. The Attorney Discipline Board affirmed. The Attorney Grievance Commission seeks leave to appeal to increase the discipline imposed.

In a unanimous opinion per curiam, the Supreme Court *held*:

The respondent's involvement in the violating of the public trust was sufficiently egregious to warrant an increase of the term of suspension to 180 days.

Where, as in this case, the proven misconduct was connected to a violation of the public trust by an official who was elected, in part, specifically to safeguard that trust, the respondent should be required to prove by clear and convincing evidence his entitlement to resume practicing law.

Modified.

*Philip J. Thomas*, Grievance Administrator, and *Richard L. Cunningham*, Associate Counsel, for the plaintiff-appellant.

*Kenneth M. Mogill* for the defendant-appellee.

PER CURIAM. This is an appeal from an order of the Attorney Discipline Board that affirmed a ninety-day suspension of respondent James J. Rostash's license to practice law. On behalf of the Attorney Grievance Commission, the Grievance Administrator argues that the imposed discipline is insufficient for the misconduct that was proven. We agree, and increase the term of suspension to 180 days.

I

In July 1993, the Attorney Grievance Commission authorized the filing of a three-count formal complaint against the respondent. The complaint stemmed from his involvement with William D. Frey, then Monroe County prosecutor, in the representation of the relatives of two men who were killed in a January 1987 automobile accident.

The Grievance Administrator alleged in count I that the respondent aided and abetted Mr. Frey in accepting and pursuing private employment in a matter in which Mr. Frey had a conflict of interest because of his substantial involvement as a public official.[1] As chief law enforcement officer for the county, Mr. Frey was responsible for prosecuting the driver of the vehicle that had struck the decedents. While charges of negligent homicide were pending, Mr. Frey allegedly agreed to represent the decedents' relatives in civil claims arising out of the matter. The respondent was accused of assisting Mr. Frey in this

---

[1] Former DR 9-101(B), which was in effect until October 1, 1988, precluded a lawyer from accepting "private employment in a matter in which he had substantial responsibility while he was a public employee." That provision is now found in Rule 1.11(a) of the Michigan Rules of Professional Conduct.

regard and of agreeing to split the eventual attorney fee, despite knowledge of Mr. Frey's conflict of interest.

In count II, the respondent was charged with failing to disclose to the Monroe County Probate Court that Mr. Frey had handled civil claims for the decedents' relatives, and had received a substantial portion of the attorney fee that was paid to settle those claims.

It was alleged in count III that the respondent had misrepresented important and material facts in his answer to the request for investigation that was filed against him. He was accused of falsely stating that he alone had handled the wrongful-death claims, and that Mr. Frey alone had handled the probate matters related to the estates.

The case was tried before a hearing panel over several dates in 1995 and 1996. At the conclusion of the adjudication stage, the panel determined that the Grievance Administrator had proven the misconduct alleged in counts I and III. The panel dismissed count II.

In its written report, the panel set forth its findings and conclusions. It found that the respondent had agreed to assist Mr. Frey in pursuing the civil claims of the decedents' relatives, and in handling the related probate matters. The panel further found that the respondent had agreed to split the attorney fee. Because of Mr. Frey's substantial involvement in the criminal case arising from the same underlying facts, this was misconduct under Rule 1.16(a)(1) of the Michigan Rules of Professional Conduct,[2] and also

---

[2] Subrule 1.16(a) provides, in pertinent part:

violated former disciplinary rules 1-102(A)(4)-(6)[3] and 7-102(A)(8),[4] the panel concluded.

In addition, the panel found that the respondent had made a material misrepresentation in his answer to the request for investigation by asserting that Mr. Frey was not involved in the wrongful-death claim, and that the respondent was not involved in the probate matters. These misrepresentations violated rules 8.1(a)[5] and 8.4(a)-(c)[6] of the Michigan Rules of Profes-

---

Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law . . . .

[3] Former DR 1-102, which was applicable to misconduct that occurred before October 1, 1988, provided, in pertinent part:

A lawyer shall not:

\*      \*      \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

[4] Former DR 7-102(A) provided, in pertinent part:

In his representation of a client, a lawyer shall not:

\*      \*      \*

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

[5] Rule 8.1 provides, in pertinent part:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact . . . .

[6] Rule 8.4 provides, in pertinent part:

sional Conduct, the panel said.

After a separate hearing concerning the appropriate discipline that should be imposed, the panel ordered that Mr. Rostash be suspended from the practice of law for ninety days.

Both sides appealed to the Attorney Discipline Board pursuant to MCR 9.118. The ADB affirmed the orders of the hearing panel, and then denied the respondent's motion for reconsideration.

The Attorney Grievance Commission has filed an application for leave to appeal with this Court under MCR 9.122, seeking to increase the discipline imposed on the respondent.[7]

II

In affirming the ninety-day suspension ordered by the hearing panel, the ADB explained:

> We note that the American Bar Association *Standards for Imposing Lawyer Sanctions* recognize delay in disciplinary proceed[ing]s as an appropriate factor which may be considered in mitigation, Standard 9.32(i). See also *Yokozeki* v *State Bar*, 11 Cal 3d 436; 521 P2d 858; 113 Cal Rptr 602 (1974). This factor, together with the mitigating effect of respondent's prior unblemished record as a member of the

_____

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer;

(c) engage in conduct that is prejudicial to the administration of justice . . . .

[7] The respondent also filed an application for leave to appeal, which we deny today by separate order.

Bar for thirty-six years leads us to the conclusion that the discipline imposed by the panel, while lenient, is appropriate under all of the circumstances.

In urging that a ninety-day suspension is not adequate for the proven misconduct, the Grievance Administrator emphasizes that the hearing panel not only concluded that the respondent had aided and assisted an elected prosecutor in violating his office, but also that he lied about the matter. This is extremely serious misconduct that requires substantial discipline to adequately protect the public, the courts, and the legal profession, the Grievance Administrator submits. Indeed, a goal of discipline is to weed out practitioners who are not trustworthy. *In re Trombly*, 398 Mich 377, 382; 247 NW2d 873 (1976), citing *In re Echeles*, 374 F2d 780, 782 (CA 7, 1967).

The Grievance Administrator further argues that this case involved a particularly disquieting violation of the public trust, i.e., the violation of a public official's implicit pledge to maintain personal honesty and integrity. When an attorney, such as the respondent, assists a public official in improperly gaining advantage from public office, that attorney is acting contrary to accepted standards.

Highlighting the *Standards for Imposing Lawyer Sanctions* promulgated by the American Bar Association, the Grievance Administrator emphasizes that disbarment is described in standard 5.11(b) as a generally appropriate sanction when

a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

Here, the respondent was found to have knowingly and intentionally assisted Mr. Frey in pursuing private employment related to a criminal case, Mr. Frey tried to hide his involvement by having the respondent sign papers relating to the wrongful-death claims, and the two lawyers split the attorney fee that was paid in the case. The Grievance Administrator argues that the respondent's participation in this activity was intentional, and adversely reflected on his fitness to practice law.

The Grievance Administrator also emphasizes standard 7.1, which describes disbarment as a generally appropriate sanction

> when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

Here, the hearing panel determined that the respondent lied in his answer to the request for investigation. It was an obvious attempt to cover up both his and Mr. Frey's misconduct, the Grievance Administrator contends. Such false statements were made with the intent to benefit both men, and had the potential of causing serious injury to the public and the profession.

Finally, the Grievance Administrator emphasizes the factors that appear in standard 9.22, and may be considered as aggravating circumstances:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

The Grievance Administrator argues that factors (a), (b), (c), (d), (f), (h), and (i) are applicable to this case, and that they demonstrate the inadequacy of the ninety-day suspension ordered by the ADB. The cumulative effect of the behavior was especially compelling because the respondent's misrepresentations were designed to shield Mr. Frey's improper conduct from disclosure. Because of the respondent's complicity, the public was powerless to learn about the conflict between Mr. Frey's private employment and the related criminal prosecution.

III

We agree with the Grievance Administrator that the respondent's involvement in the violation of the public trust was sufficiently egregious to warrant that he be required to petition for reinstatement to the practice of law, which is the practical effect of a suspension of more than 179 days. See MCR 9.123 and 9.124.

In addition to the points argued by the Grievance Administrator, we note that MCL 49.158; MSA 5.756 provides, in pertinent part:

No prosecuting attorney shall receive any fee or reward from or on behalf of any prosecutor or other individual for services in any prosecution or business to which it shall be

his official duty to attend, nor be concerned as attorney or counsel for either party other than for the state or county in any civil action depending upon the same state of facts upon which any criminal prosecution commenced or prosecuted shall depend . . . nor shall any attorney be permitted to prosecute, or aid in prosecuting any person for an alleged criminal offense where he is engaged or interested in any civil suit or proceeding depending upon the same state of facts, against such person directly or indirectly.

In the instant case, by virtue of the contingent-fee arrangement with the decedents' relatives, Mr. Frey had an interest in any recovery by them against the driver who was at fault in the fatal accident. Mr. Frey's consent to a sentence bargain in exchange for the agreement of the driver's girlfriend to waive any claims against insurance proceeds was consistent with this financial interest. By representing that he was actual counsel in the wrongful-death case, and failing to disclose Mr. Frey's involvement, the respondent helped to keep secret this violation of the public trust.

Pursuant to MCR 9.118(D), the ADB has authority to "affirm, amend, reverse, or nullify the order of the hearing panel in whole or in part or order other discipline." It is this Court, however, that has the ultimate responsibility to oversee the conduct of the approximately 32,000 members of the State Bar, and to safeguard the reputation of the profession. Thus, under MCR 9.122(E), this Court "may make any order it deems appropriate." We invoke our power to change a disciplinary order, however, only if the sanction imposed is inappropriate. *In re Grimes*, 414 Mich 483, 495; 326 NW2d 380 (1982), quoting *State Bar Grievance Administrator v Posler*, 393 Mich 38, 41; 222 NW2d 511 (1974).

Although analogies are of limited value in determining the appropriate discipline in a given case, we note that the respondent in *Grimes* had a previously unblemished record after more than thirty years of practicing law in this state. During some of that time, Mr. Grimes served as an assistant prosecuting attorney and as an associate municipal judge. He also had a commendable record of community involvement.

In the instant case, the ADB considered the respondent's essentially unblemished record after thirty-six years of practicing law to be a mitigating factor. Like Mr. Grimes, the respondent was a public employee for some of that time.[8] The hearing panel also was presented with testimonial evidence regarding his character and community contributions. As we made clear in *Grimes*, however:

> [N]either [a respondent's] legal background nor his community accomplishments obliterate our responsibility to impose the discipline his violations warrant. In a case involving the reinstatement petition of a former probate judge, we noted that: "Regardless of our feelings of sympathy for a disbarred attorney, our paramount concern must always be to safeguard the public." *In the Matter of Trombly*, 398 Mich 377, 382; 247 NW2d 873 (1976). [414 Mich 497.]

In the instant case, where the proven misconduct was connected to a violation of the public trust by an official who was elected, in part, specifically to safeguard that trust, we believe that the respondent

---

[8] The respondent was the chief assistant prosecutor in Monroe County for three years, and subsequently was twice elected prosecutor. His only previous discipline, an admonishment to which he consented, stemmed from a closing argument that he made in a criminal case while acting as special prosecutor.

should be required to prove by clear and convincing evidence his entitlement to resume practicing law. This requires a suspension of at least 180 days.

For the reasons given, we order that the period of suspension be increased from 90 to 180 days. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, KELLY, and TAYLOR, JJ., concurred.